## SYLVESTER S. BELOTE *v.* THE STATE OF MISSISSIPPI.

1. EVIDENCE: ACTS DONE IN CONSEQUENCE OF INADMISSIBLE CONFESSION, ARE COMPETENT EVIDENCE.—Whether confessions improperly obtained, and which are verified and corroborated by facts and circumstances afterwards found to be in accordance with the statement of facts made in the confession, are admissible in evidence on account of the corroboration—*quære?* but it is well settled, that acts of the accused done in consequence of inadmissible confession, and tending to show his guilt, should be received in evidence against him; and it is also competent for the prosecution to show, that the witness was directed by the accused where to find the stolen goods, or the instrument of the crime, and that they were found there accordingly, but not the acknowledgment of the accused that he stole them or placed them there.

2. SAME: CASE IN JUDGMENT.—The prisoner, upon a trial of an indictment for the larceny of bank bills, which were all of the denomination of five dollars, in consequence of improper means used by the prosecutor, and upon being charged by the prosecutor with the crime, went to his (the prisoner's) corn crib, and produced bank bills of the same denomination, and on the same bank as those stolen, which the prosecutor swore he believed to be a part of the stolen property: held that the said acts of the prisoner were admissible in evidence against him, the identity of the bills produced with those stolen, being suffi-

Belote *v*. The State .of Mississippi.

ciently established by the testimony of the prosecutor, and the fact that they were produced by the prisoner, upon being charged with stealing them.

3. SAME: THE FINDING OF PROPERTY IN CONSEQUENCE OF INADMISSIBLE CONFESSION, NOT ADMISSIBLE UNLESS IDENTIFIED.—The fact that property alleged to have been stolen, was found in consequence of information procured from the accused, but by improper means, is not admissible in evidence against him, unless the property so found, be identified as the property stolen.

4. INSTRUCTIONS: GENERAL TERM IS LIMITED BY THE FACTS OF THE CASE.— The meaning of a general term used in an instruction to the jury, and which is capable of a construction which would render the instruction erroneous, will be limited by the facts and circumstances of the case; and if with reference to these, it appear that the jury could not have been misled by it, the instruction will not be held erroneous on that account; and hence, in a prosecution for larceny, where the evidence all tended to show that the goods were stolen, and there was no evidence tending to show that they were lost by casualty, if the court in charging the jury upon the presumption arising from the possession of the goods after they were stolen, use the term "lost" instead of "stolen," it will not render the instruction erroneous.

5. LARCENY: PRESUMPTION ARISING FROM RECENT POSSESSION OF STOLEN GOODS.—The possession by a party of stolen goods, shortly after their loss by the owner, is presumptive evidence of guilt, which, however, may be explained; and if the party in whose possession they are found, fails satisfactorily to account for his possession, the presumption of guilt arising from the recent loss and possession, will warrant a conviction. What will be sufficient to account for the possession, or to remove the presumption, will depend much upon the length of time intervening between the loss by the owner, and the discovery of the possession in the accused, the nature and character of the goods, and all the circumstances of the case.

ERROR to the Circuit Court of Tippah county. Hon. P. T. Scruggs, judge.

The plaintiff in error was indicted in the court below for the larceny of ten bank bills, each of the denomination of five dollars, and alleged to be the property of one Ephraim Strout. He pleaded not guilty.

Ephraim Strout, for the State, testified as follows: About the —— day of November, 1857, witness lost about one hundred and sixty dollars, in bank notes of the Empire Bank of the State of Georgia; that each of said notes was of the denomination of five dollars; he kept the money in a pocketbook, which he laid upon the mantelpiece, behind the clock; the defendant was at witness's

VOL. VII.—7

house on the Saturday preceding the Sunday on which the money was missing; there were some persons working about witness's house at the time, and at first he suspected them; but afterwards he suspected the prisoner, and about three weeks after the money was stolen, he charged him with stealing the money; witness said to the prisoner, "that if he would confess and tell all about it, and tell witness where the money was, and give it up and leave the county, he (witness) would not prosecute him;" "upon this statement of witness to the prisoner, he agreed to do so, and did tell where the money was, and confessed having taken it." To the introduction in evidence, of this statement of the prisoner, he objected. This objection was sustained, and the evidence ruled out. The district attorney then asked the witness, "to tell what the prisoner did in regard to the showing of the money;" and in answer to this question, the witness said "that the prisoner went to the corn crib and got ninety dollars of the money out of the crib, and gave it to witness; witness saw the defendant get the money, and that it was of the same kind that the witness had lost, all five dollar bills, and witness believed the bills were his." To the introduction of this proof the defendant objected; but his objection was overruled, and the evidence went to the jury, and the defendant excepted.

The State then introduced L. M. Denny, the prosecutor, who stated that he had known the prisoner for three years, and lived in the same neighborhood where the money had been lost; that hearing that the defendant was charged with taking the money, witness went to defendant and told him "it would be better for him to tell all about it; that if he did not he would be prosecuted and sent to the penitentiary, or prosecuted for it; that if he (defendant) would tell all about it, witness would stand up to him, and that as some talked of beating him, witness would not suffer him to be hurt;" and thereupon defendant said to the witness, "he would get forty dollars of the money." To this statement of defendant, as deposed to by witness Denny, the defendant objected. This objection was sustained, "and the confessions ruled out." The district attorney then asked witness to state "what the defendant did in regard to the money." In answer to this, the witness stated "that the defendant, witness, and one Matthis, went to the defendant's house, which was about sixty yards off; and that soon afterwards the defendant went

out of the house to get some brush to kindle the fire with; witness remarked to Matthis that defendant stayed a good while, and asked Matthis to go and see where defendant was; Matthis went out, and presently witness heard a rap at the door, and witness went to the door, and Matthis then asked witness to come out; witness did so, and went round to the chimney, where Matthis and defendant were; thereupon Matthis handed witness some money, and told witness to count it, which witness did, and found that there was fifty-five dollars of it, all in paper money, and in five dollar bills, but witness does not know what banks these bills were on." This last statement of the witness, in regard to the defendant's acts, was objected to by defendant, as incompetent evidence, but his objection was overruled, and he excepted.

The witness then, on cross-examination, stated that the defendant was, at the date of the loss of the money, and had been for some time previous thereto, very intemperate; that he was weak-minded, and when under the influence of liquor, was almost insane; that the prisoner's father was a respectable and honest man, and that whilst prisoner was a boy, and previous to his marriage, he was regarded as honest; but that he married into a bad family, and since then had kept bad company, and was surrounded by men of bad character; and that relations of his wife of doubtful character for honesty—shrewd and smart—were in the habit of staying at defendant's house, and that one or more of them were suspected of having stolen Strout's money; that they had opportunity to do, and witness "believed at the time, and still thought it most likely, that one of them had stolen the money, and put it off on defendant in some way."

This was all the evidence, except the admission in the bill of exceptions, " that all technical points were proven, excepting the felonious taking and carrying away of the money as charged."

The court, at the instance of the State, instructed the jury as follows :—

1. If the jury believe from the evidence that defendant took the bank bills of Ephraim Strout, with intent to apply them to his own use, they will find him guilty.

2. If the evidence satisfy the jury that Ephraim Strout lost bank bills, and that they or a part of them had been found in defendant's

possession shortly after, in the absence of other evidence proving how defendant came into possession, they will find him guilty.

3. The guilt of the defendant may be proven by circumstantial, as well as by direct proof.

To the giving of all which the defendant excepted.

The defendant asked the following instructions :—

1. If the jury have a reasonable doubt of whether defendant did feloniously take the money or not, they must acquit.

2. That when a man is taken in possession of property, his statement of how he came by the property cannot be offered by defendant, though it may be by the State.

The first was given and the second refused; the defendant excepted.

The jury found the defendant guilty, and he moved for a new trial, which was refused, and he excepted and sued out this writ of error.

*F. Anderson,* for plaintiff in error.

The points presented for the consideration of the court arise, First, out of the exception taken to the admission of the testimony of the witnesses Strout and Denny.  These witnesses having stated that confessions were made to them by the prisoner, under circumstances which rendered them inadmissible, were permitted, nevertheless, to state the conduct and actions of the accused, in the one case, in going to a crib, and getting ninety dollars of the same kind of bills that witness (Strout) had lost, "all five dollar bills," and which witness believed were his, and in the other, in standing by while one Thompson Matthis (not a witness in the cause), handed the witness $55, in paper bills, but on what banks witness did not know, the accused having first gone out of the house, and afterwards being followed by Matthis, who presently returned to the door and called to witness to come out there, which he did, and went round to the chimney where they were, and where the money was handed to witness by Matthis.  This witness showed that the prisoner was threatened with beating, and he promised to protect him if he would confess.

This testimony, upon clear principles, was inadmissible.  If it amounted to anything, it amounted in each case to a confession,

which, being under the influence, in the one case, of promises, and in the other of threats and promises, was inadmissible.

Without presenting at present the question, whether the facts which were discovered in consequence of the confession, viz., the finding the money in the one case in the corn crib, and in the other in the chimney corner (if that is a fair inference from the testimony on this point), I insist that nothing but those facts, unconnected with the confessions, were admissible. I think that the rule established in the case of *Jordan* v. *The State*, 38 Miss. 382, excludes both the facts disclosed and all parts of the confession or conduct of the accused, when he acts under the influence of fear or hope. But, to understand the bearing of that case, let us see how the law stood on authority before its decision.

The general rule was, that though the confession was inadmissible, yet facts brought to light in consequence of it, might be used, and it was held, that where, in consequence of an inadmissible confession, property stolen was found at the lodgings of the accused between the sackings of her bed, the fact of finding the goods only could be proved. 2 Russell' on Crimes, 861; see also 1 Leach Cr. C. 298, *Warickshall's case.*

So, where the excluded confession showed that the goods had been disposed of to a particular person, that person might be called to show that he had received the property. 2 Russell on Crimes, 861; 1 Leach Cr. C. 431, *Lockhart's case.*

This, I insist, is the most that the English authorities fairly construed allowed. It is true that Russell, at the page last cited, says that the cases have gone further, and that where an inadmissible confession describes the place where the goods are concealed, evidence might be given that the accused did so describe the place, and that the goods were afterwards found there, citing 2 East Pl. Cr. 658, to sustain him. It is to be observed, however, that East, at the page cited, does not fully sustain the doctrine of Russell, but says in fact, that this is going too far, and that the most that is proper to be left to the jury, is the fact of witness being directed where to find the goods, and their being found there, but not the acknowledgment that he stole them, or put them there. 2 East, 657, 658.

And this is acknowledged by the former author, to be a proper

limitation, for, on the next page, 862, in stating the rule, he says again, " that so much of the confession as relates strictly to the fact discovered, may be given in evidence; it is the common practice to leave to the jury the fact, that the witness was directed by the accused where to find the goods, and his finding them there, but not the acknowledgment that he stole them or put them there, which is to be collected or not from all the circumstances of the case."    2 Russ. 862.

The author here cites 2 East, 658, as above, and also the case of *Rex* v. *Gould*, 38 Eng. C. L. R.    But in the note on this page of Russell, it will be seen that Phillips, after stating the case of *Rex* v. *Gould*, adds, "But the judge would in such case direct, and so it is understood did direct, the jury in that case, that his (prisoner's) statement must not be taken as proof that he concealed, but only as evidence that he knew, or was privy to the concealment, from which, together with the rest of the evidence, they would consider whether it was probable that he concealed it himself."

Again, on the subject of acts done after a confession improperly obtained, Russell says, " It has been determined, after consultation of all the judges, that any acts done afterwards may be given in evidence, notwithstanding they may have been done in consequence of the confession," citing 1 Leach, 298, *Warickshall's case;* see 2 Russ. 863.    He is evidently here speaking of acts of the prisoner in the nature of confessions.    But on examination of the authority cited, 1 Leach, 298, and those cited in the note to that case, it will be clear that only such facts transpiring, *inter alias*, as may be found by extraneous evidence, are referred to.

Again, at page 863, this author says, " From a recent decision it would seem that what the prisoner says at the time such acts are done, may also be received in evidence," citing *Rex* v. *Griffin,* Russ. & Ry. C. C. 151; and this authority sustains the citation, but as I will hereafter show, on the same day the same court held directly the reverse.

I have shown above, the farthest point to which the strongest English authorities on that side of the question have gone, and have been thus particular in doing so, for the purpose of calling attention to the extreme caution manifested in violating the true rule, that neither the acts nor words of the prisoner obtained under duress,

should be used against him, and the qualifications and limitations which even those courts which have departed from the rule, have laid down for their action.

But the weight of English authority is against the above views stated by Russell, and held by the authorities cited by him.

Hawkins P. C. 595, states the rule thus: "If any facts arise in consequence of an admission" (incompetent itself), "they may be given in evidence, because they must ever be immutably the same, whether the confession which disclosed them be true or false, and justice cannot suffer by their admission. The truth of these contingent facts, however, must be proved independently of, and not coupled with or explained by the conversation or confession from which they are derived." 2 Hawk. P. C. bk. 2, ch. 40, § 35.

Lord Eldon, in the case of *Rex* v. *Hervey*, held " that in case of an inadmissible confession, it was proper to direct an acquittal, unless the fact proved" (by extraneous evidence) " would have been sufficient for conviction without any confession leading to it." (I cannot obtain the report of this case, but it is cited in 2 Russ. 862, and 2 East, 658.)

In *Rex* v. *Jones*, Russ. & Ry. C. C. 152, decided on the same day and by the same court which decided the case of *Rex* v. *Griffin*, last cited from Russell, a directly opposite rule was established. In this case the accused, under a promise of favor, handed to the prosecutor eleven shillings and six and a half pence, saying it was all he had left of it, and it was held that this testimony was inadmissible, and that the conviction was wrong.

In *Rex* v. *Jenkins*, Russ. & Ry. 492, the accused, under a promise of favor, confessed, and carried the officer to a house, as the house where he had disposed of the property, and pointed to the person to whom he disposed of it, who, however, denied it, and the property was not found; it was held that the acts of the prisoner were not admissible.

It may be said that in this case there is a distinction, because the act in the nature of a confession was not confirmed by finding the property; but this, as will be shown directly, makes no difference in principle.

In 1 Archbold Cr. Pl. 130-1-2-3, the above cases are cited and discussed, and the author holds that the only question in such cases

which can be asked is, whether in consequence of something the witness heard from the prisoner, he found anything and where, and the witness in answer can only give in evidence the fact of discovery.   He refers to one case as going further than this, and that is the case of *Rex* v. *Griffin*, cited above, from Russell; but he cites in opposition both the cases of *Rex* v. *Jones* and *Rex* v. *Jenkins*, and in reference to the latter holds that the fact of the goods not being found makes no difference ; that if in this case the goods had been found at the house, the witness might have proved he found them there in consequence of something he heard from the prisoner, but whether that would let in proof of the prisoner's act in going with the officer, is quite a different question.

It is evident that this author sees no difference between words of confession, or acts which are in the nature of confessions; and the same may be said of Russell, for in endeavoring to make out the point that such acts are admissible, he is compelled also to hold, that such parts of the words of confession as relate to the fact discovered and found, are also admissible.   There is certainly no difference in principle between them, for acts may be simulated as well as words; and if acts are let in because the inference from them is confirmed by the facts found, words should also be, because in each case the words as well as acts, if confirmed by the other proof, must, in the language of Hawkins, be "immutably true."

The latter view of the English authority, the doctrine of Lord Eldon, Hawkins, and Archbold, and the cases last cited, are fully sustained in *State* v. *Aaron*, 1 Southard's Rep. 239.

It is said that the case of *Van Buren* v. *The State*, 24 Miss. 516, is in opposition to this view; but on examination of that case, the question was not presented, and what the court there says is only a dictum.

The case of *Jordan* v. *The State*, 32 Miss. 382, is directly in point, and fully sustains our view.   It may be said this was a case of compulsion, but there is no difference in principle; and if there were, one of our exceptions (that to the testimony of Denny) falls fully within the distinction, as the witness states that as some talked of beating the accused, he, witness, would protect him, if he would confess, and not suffer him to be hurt.

But the property found was not sufficiently identified.   This

point and the authorities cited on it, will become important, in connection with the instruction to be hereafter discussed.

The bare circumstance of finding in one's possession property of the same kind that has been stolen, unless from marks or other circumstances it can be identified, is not in general, sufficient evidence, unless the fact is of such very recent occurrence, as to afford a reasonable presumption that the property could not have been acquired in any other manner; in which case the court is warranted in concluding it is the same, unless the prisoner can show the contrary. And to illustrate this principle, the cases are put in the authorities, of a man coming out of another's barn, and corn found upon him of the same kind with that in the barn, and of one coming from ships or wharfs, with sugar or other articles of like kind upon him; and this is only to be understood of such articles as are not susceptible of identification. 2 East Pl. C. 656, 657; 2 Russ. 124; 2 Archb. Cr. Pl. 369–4–5, 370–1–2, notes. See also *Jordan* v. *State*, 32 Miss. 386, where the court says, in reference to such cases, the place of finding and knife found, must both agree with the description given by the accused, and if a discrepancy in either or both appeared, the court should have excluded the evidence.

Second. The second instruction granted on behalf of the State was erroneous. It declares that if property is lost and found in possession of defendant shortly after, the jury should convict, or rather, they are directed to convict. This is not the true rule. The rule is, that a felony must be proved to have been committed, and then possession shortly afterwards, unexplained, warrants only a presumption of guilt. 2 East, 656–8; 2 Russ. Cr. 124, 125; 2 Archb. Cr. Pl. 369, note.

But this is only a presumption of fact which may or may not, under all the circumstances, authorize a conviction. The rule is one of necessity, and it is admitted that under it many innocent persons have suffered. Great strictness is therefore required in its application. In the case of lost property, possession is not presumptive evidence of larceny, even if lost property is the subject of larceny. Whether in any case, and if so under what circumstances, lost property may be the subject of larceny, is a question which will come before the court in another case, and I do not, therefore, desire to obtain a judgment from the court on this point in this case; but

even where it is held the subject of larceny, as in England, it is well established that to constitute larceny in such case, it must appear that the finder had the means of knowing the owner, and further, that the felonious intention to convert the property, must have been entertained *eo instanti* of the finding, and this must appear. *Regina* v. *Preston*, 8 Eng. L. & Eq. Rep. 589.

It is clear, therefore, that as a legal proposition, it is erroneous to say, that the finding a party in possession of lost property, recently after the loss, is evidence of the larceny, since the additional facts above indicated, must be shown to the satisfaction of the jury. On the contrary, the larceny itself must be found by the best evidence the nature of the case admits, before you can resort to any presumption of guilt founded on recent possession ; and where circumstances are resorted to to establish a felony, as the foundation of such presumption, they must be such as are irreconcilable with any supposition but that of guilt in the taking. 2 Archb. Cr. Pl. 368–1, note.

It may be said that there is no proof going to show a loss, and therefore there is no error to the injury of the accused. We answer, that the instruction was certainly one applicable to the case as proved by the State, and that it evidently secured the conviction of the accused, and the State cannot be heard to say the accused was not injured. It was a question for the jury to decide, whether a larceny was proved, and they were in effect instructed that the main and essential point, as shown by all the authorities, viz., proof of a felony before you can resort to the presumption from possession, was not necessary to be proved. But in point of fact, the proof, which we will not here discuss, may have left very grave doubts whether a larceny was in fact committed.

But this is not the main ground on which we object to the instruction.

The instruction was, that the jury will convict on the proof of possession shortly after, &c. There is not a case which has gone this length. The possession affords only a presumption of a fact, which, therefore, may or may not be true, and which, therefore, the jury, under the particular circumstances of the case, might disbelieve. All the authorities hold that it amounts only to a presumption, strong or weak according to the circumstances of the case, amongst which are enumerated particularly the length of time after

the larceny, compared with the character of the goods, and their facility of being exchanged from hand to hand. It is a presumption too, of so weak a character, that it may be rebutted by proof of good character alone, or of unsuspicious conduct of the accused. 2 Archb. Cr. Pl. 369–4.

Russell lays down the rule thus: that it is one of necessity, which will probably seldom lead to a wrong conviction, if due attention be paid to the particular circumstances of the case, amongst the most prominent of which he enumerates the length of time, the conduct of the accused, the character of the goods, &c. 2 Russ. Cr. 123; 2 East, 657.

Justice Coleridge, in a case where two sacks were found in possession of a person twenty days after the larceny, says to the jury, "If I were to lose my watch, and in a few minutes it were found in possession of one of you, it would afford the strongest ground for presuming you had stolen it; but if a month after it were found in your possession, the presumption would be greatly weakened, because stolen property usually passes through many hands." 2 Russ. Cr. 123.

As some articles pass from hand to hand much more rapidly than others, the nature of the articles ought to be taken into consideration by the jury, in determining whether the possession is so secret as to lead to the conclusion that the prisoner stole them. 2 Russ. Cr. 124.

In *Rex* v. *Partridge*, 32 Eng. C. L. R. 627, Patterson, justice, said: "I think the length of time is to be considered with reference to the nature of the articles. If they are such as to pass from hand to hand readily, ten months would be a long time, but here that is not so. It is a question for the jury."

Finding goods in the house of the person is not sufficient. Roscoe Cr. Ev. 18; 2 Russ. Cr. 123, n., citing Starkie.

In the case of *Rex* v. *Adams*, an axe, a saw, and a mattock, were found in possession of the accused, three months after the larceny, and it was held not sufficient to put him on his defence. 2 Arch. Cr. Pl. 370–1, n. 2; *Jones* v. *State*, 26 Miss. Rep. 247.

Again, if it should be held that the identification of the articles is a subject for the jury and not the court (in which latter event the testimony of the two witnesses should have been excluded), then

it is clear that the question of identification becomes an important one in ascertaining the force of the presumption. On this point see the authorities before cited, and also *Montgomery* v. *The Commonwealth,* 11 Metcalf Rep. 537.

From these authorities I think it is clear that the whole subject is one for the jury, to judge of the presumption according to all the facts, and the weight to which it was entitled, under the particular circumstances of the case, and that it should have been left to them without instruction, that if the possession were found they should convict.

Another valid objection to this instruction, arises out of the rule as established. The accused is not required to show by proof, as this instruction required, how he came by the property. If he make himself a rational explanation, and that explanation is not disproved by the State, he is entitled to an acquittal. 2 Arch. Cr. Pl. 369–5.

The accused was as much entitled to the benefit of that principle in this case, as if the proof had shown that he did give a rational explanation, and that explanation were uncontroverted in the proof; and for this plain reason, he was prevented by the prosecutor and witnesses from giving it. He was placed under the influence of hope and of fear, which, according to the principle of evidence incapacitates him from telling the truth, and giving a true explanation, and therefore his statement is excluded. Had he been given the chance, he might have explained.

I do not discuss the evidence, as I propose to do so in an oral argument.

*T. J. Wharton,* attorney-general, for the State.

It might be argued with more than mere plausibility, on the authority of many late and leading cases, in which former decisions are reviewed and the conflict settled in favor of the proposition, that to render a confession inadmissible, on account of being superinduced by threats or promises, those threats or promises should have been made by those in authority, or the party at least have been put in duress, and I only now incidentally refer to a few of them, to show that the plaintiff in error has no just ground to complain of the action of the court below in admitting the *facts* and *acts* above noticed.

" The chief question, it is said, is whether the inducement held out to the prisoner, was calculated to make his confession an untrue one ; if not, it will be admissible." Whart. Am. Cr. Law (2d Ed.), 256 ; 2 Russell on Cr. 845.

In Archd. Cr. Pl. (5th Am. Ed.) 140, it is said, " It seems there has been a difference of opinion on this point, whether a confession made to a person who has no authority, after an inducement held out by that person, is receivable or not. In a recent case, however, it was stated that it is the opinion of the judge, that evidence of any confession is receivable, unless there has been some inducement held out by some person in authority, and that if a person, not in any office or authority, held out to the accused party an inducement to confess, this will not exclude a confession made to that party." *Queen* v. *Sarah Taylor,* 8 C. & P. 733.

Many other authorities of the like kind, might be cited, but as they relate to a point which was ruled against the State in this case, and I cannot have the benefit of a revision of them in this court, I will not enlarge upon them. I only refer to them incidentally, and to deduce the conclusion, that if the confession were improperly ruled out, the prisoner has no cause to complain ; he was benefited at least to the extent of their exclusion ; and if both the confessions and acts, to wit, the pointing out of the place, and going there and getting the money, were admissible, the latter were clearly so. But upon the supposition that the court properly excluded the confession, I will endeavor to show that it as properly admitted the acts named above.

In the case of *Van Buren* (a slave) v. *The State,* 24 Miss. R. 512, the plaintiff in error was indicted and convicted of burglary. It was proved that his employer charged him with the crime, and whipped him, but obtained no confession. The same evening he took him up and threatened to whip him again, when he confessed having gone into the barn at night, and taken from there certain articles, stating where they could be found, accompanied him to the place pointed out in his confession, and showed him the articles. This court held that the confession was inadmissible, but say, "No objection is made to the admission of that part of the evidence of the witness detailing the conduct and action of the prisoner in point-

ing out the whiskey and sugar. These were facts which it certainly was competent to prove."

In Archd. Cr. Pl. (5th Am. Ed.) 144, the author says, at the conclusion of a review of the doctrine of the admissibility of confessions, " Although a confession for the above or any other reasons, may not be receivable in evidence, yet any discovery that takes place, in consequence of such confession, or any act done by the defendant, if it be confirmed by the finding of the property, *Rex* v. *Jenkins*, Russ & Ry. 492, will be admitted; as, for instance, if a man, by promise of favor, be induced to confess that he knowingly received certain stolen goods, and that they are in such a room in his house, and the goods be found there accordingly, although the confession itself cannot in that case be given in evidence, yet it may be proved that in consequence of something the witness heard from the defendant, he found the goods in question in the defendant's house. And it would seem, from a late decision, that declarations of the defendant accompanying such acts, may be received in evidence, even though the confession itself may be inadmissible." *Rex* v. *Griffin*, Russ. & Ry. 151.

Wharton's Cr. L. (2d Ed.) 257, thus states the rule, " Although confessions obtained by threats or promises are not evidence, yet, if they are attended by extraneous facts which show that they are true, any such facts, which may be thus developed, and which go to prove the existence of the crime, of which the defendant was suspected, will be received as testimony, where the party thus confessing, points out or tells where the stolen property is, or where he states where the deceased was buried." And in support of the doctrines of the text, he cites, amongst many others, two very strong cases, one, the case of *Hudson* v. *The State*, 9 Yerger, 408, and *The State* v. *Brick*, 2 Harring. 530.

In the first of these cases a confession had been made by the defendant under promises of favor, that he had stolen the money; he then went with several persons down into the woods, about half a mile from the prosecutor's house, and dug in the ground at the root of a tree, and took from thence the bank notes stolen; he went a little farther on and dug out of the ground the silver coin stolen. The court, referring to these facts, say, " this could not have been done unless he had deposited it there himself, or knew who did, and

that the fair and legal presumption is that he did it himself;" and after repeating the rule, as above laid down, by Archbold, as to confessions, they say, "If property has been stolen, and a person accused of the offence, points out the place where it is concealed, he must be considered the thief, unless he can reconcile his knowledge with his innocence."

In the case from 2 Harrington supra, the prisoner was indicted for stealing a package of bank notes, sent by the bank to which they belonged, through a passenger, to one Campbell, in Philadelphia; the prisoner was the driver of the stage in which the passenger travelled, the bank notes were in a sealed package, a part of them was found upon the person, and others secreted about the house of the prisoner. He confessed that he found them lying in the stage, sealed up. In pursuance of his confession, a part of the money was found. He confessed, after being advised to do so, and being told it would be better for him. The court, after adverting to the several rules before noticed, say, "But where the confession leads to the discovery of property, or produces a development of facts which, *per se,* show the guilt of the party, these are to be considered by the jury."

The doctrine, that no part whatever of the confession is to be received in evidence, was laid down by Lord Eldon, in *Hervey's case.* 2 East, P. C. 658.

Roscoe, however, says the rule was applied too strictly; and in *Butcher's case,* 1 Leach Cr. L. 301, note a, so much of the confession as related strictly to the fact discovered by it was held admissible; "for the reason of rejecting extorted confessions, is the apprehension that the prisoner may have thereby been induced to say what is false, but the fact discovered shows that so much of the confession as immediately relates to it is true." Roscoe Cr. E. 47.

Russell, referring to the same dictum of Lord Eldon, in the above case, after reviewing a multitude of cases on the point, says: "As far as these cases go, there can be no difficulty as to the propriety of their decisions, because the bare facts of the property being found in the possession of the prisoner, in the one case, and of his dealing with it as his own, in the other, would, unconnected with any confession, have been clear evidence in support of the prosecution. But the cases have gone further than this; for it has been held,

that on a prosecution for receiving stolen goods, where a confession had been improperly drawn from a prisoner, in the course of which he described the place where the goods were concealed, evidence might be given, *that he did so describe the place*" (the italics are the author's), "and that the goods were afterwards found there. In this case, it is clear that the bare fact of finding the goods would be no evidence against the prisoner, unless coupled with a part of the improperly obtained confession. *And some* have accordingly doubted whether *any part* of such a confession can be properly used for such a purpose. Thus, *in Harris's case, Lord Eldon* said, that where the knowledge of any fact was obtained from a prisoner under such a promise as excluded the confession itself from being given in evidence, he should direct an acquittal, unless the fact itself proved would have been sufficient to warrant a conviction without any confession leading to it; and he so directed the jury in that case. *But the more established rule, according to later practice and later authorities, is that so much of the confession as relates strictly to the fact discovered by it may be given in evidence.*" He assigns the reason already quoted from Roscoe. 2 Russ. on Cr. 861–863; see also 1 Ph. Ev. (old ed.) 116, 117, 168, 169; Whart. Am. Cr. L. (2d ed.) 255–259; Greenl. Ev. 256 (quoted in 2 Russ. Cr. 828, note *r*).

Cowen & Hill, in their notes, 2 Ph. Ev. 249, 250, referring to the doctrine laid down, supra, in 1 Ph. Ev. 116, and the contrary doctrine asserted in the authorities read in oral arguments by counsel for plaintiff in error, say: "Yet there is a strong current of authority running with the text, that both the disclosure and the fact or circumstance connected with, and going to its corroboration, shall also be received, and they go to the jury with their joint force." And as to what may be considered corroborating circumstances, see *State* v. *Aaron*, 1 South. R. 238, read by Mr. Anderson, and that of the *State* v. *Guild*, 5 Halst. R. 185, 186, the same court (N. J.), read by me. See also *State* v. *Moore*, 1 Hayw. 482; *State* v. *Jenkins*, 2 Tyler, 377; *Hudson* v. *State*, 9 Yerger, 408; *Rex* v. *Griffin*, 1 Eng. Crown Cases (Russ. & R.), 151; *Rex* v. *Warickshall*, 1 Leach C. L. 298, and note to *Butcher's case; Rex* v. *Lockhart*, Ib. 430.

It is true that, on the same day the case against *Griffin*, supra,

was decided, the case of *Rex* v. *Jones,* reported at page 151, 1 Eng. C. C. (Russ. & R.) was decided by the same court, in which the prosecutor asked the prisoner, on finding him, for the money he had taken out of the prosecutor's pocket; but before the money was produced, said, "he only wanted his money, and if the prisoner gave him that, he might go to the devil, if he pleased; upon which the prisoner took 11s. 6½d. and said it was all he had left of it." It was held that the confession ought not to have been received.

In *Griffin's case,* a majority of the judges, viz., Lord Ellenborough, Mansfield, C. J., Macdonald, Heath, Grose, Chambre, and Wood, held the conviction right, and the evidence admissible; Lawrence and Le Blanc were of a contrary opinion—seven to two.

In *Jones's case,* Macdonald, Chambre, Lawrence, Le Blanc, and Heath, held that the evidence was not admissible, and the conviction wrong. Wood, Grose, Mansfield, contra. Lord Ellenborough *dubitante,* five to three, and two of those five, Lawrence and Le Blanc, being the two who had dissented in *Griffin's case.*

The case of *Rex* v. *Row* is the very next case after *Jones's,* reported in the same book, decided on the same day—all the judges present who sat on the trial of the other cases, and all concurring in the opinion, that where persons having "nothing to do with the apprehension, prosecution, or examination of the prisoner, admonished him to tell the truth, and consider his family;" that such admonition was no ground for excluding a confession made an hour afterwards to the constable in person. The reporter adds, that "this case and the two former (*Griffin's* and *Jones's*) being so much in *pari materia,* Chambre, J., stated them together, and reserved the question on the admissibility of the evidence for the opinion of the judges, in consequence, as he stated, of the obscurity and discordance of the cases upon the subject that are in print." In note (a) to the case (*Row's,* supra) is a reference to *Warickshall's case,* from 1 Leach, supra, and to the cases, Ph. Ev. 112, 4th ed.; and to Stark. Ev. Part IV, page 49.

In *Regina* v. *Gould,* 38 Eng. Com. L. (9 Carr. & P.) 156, it was held, that where anything is found in consequence of a statement made by a prisoner, under circumstances which preclude its being

given generally in evidence, such part of it as relates to the thing found in consequence is receivable, and ought to be proved.

I have shown what the rule is, as laid down by all the approved authors — Greenleaf, Archbold, Russell, Starkie, Phillips, Roscoe, Wharton — in the exclusion of confessions obtained by threats, or promises of favor; I have also shown that the reason upon which the rule is founded is the apprehension that parties may be induced, by such influences, to make untruthful statements; but the reason of the rule, and the rule itself, cease when the discoveries, consequent upon the confession, verify the confession. There must be this coincidence or agreement. When the confession leads to a discovery of the fact, and the fact confirms the truth of the confession, they are indissolubly connected as *res gestæ*, and admissible. In *Rex* v. *Jenkins*, Russ. & R. 491, the court say, "If a confession is improperly obtained, it is a ground for excluding evidence of the confession, and of any act done by the prisoner, in consequence, towards discovering the property, unless the property is actually discovered thereby."

I will not repeat the argument I made upon the coincidences, establishing the guilt of the accused, drawn from the concealment of the money—the identification of the money—Georgia bank-notes —so large a number of five-dollar bills, not shown to be current in that quarter—the presence of the accused at the house of Stroup the day before the money was missed. To say the least of them, they establish that presumption of guilt—connected with the testimony of Strout, proving sufficiently the *corpus delicti*—which is sufficient to convict, unless rebutted.

2. There is no time fixed when the presumption of guilt from possession of stolen goods ceases. The jury is to look to the particular circumstances of each case in determining whether the possession is so recent as to lead to the conclusion that the prisoner stole them. 2 Archb. Cr. Pl. 370, 1–2.

In *State* v. *Bennett*, 2 Conn. Rep. 692, the above presumption was not rebutted by the lapse of two months, between the theft and finding. In *State* v. *Montgomery*, 11 Metc. R. 534, a package of bank notes was stolen in December; a portion of them was found upon the prisoner the following March, and another portion in

April: held to be within the above rule, taken in connection with other circumstances proved.

Wills on Cir. Ev. 64, under the head "recent possession of fruits of crime," goes at large into the rule, and the cases within and without it.

In this case the prisoner retained them longer, because they were uncurrent bank notes; 1st, not so likely to get clear of them as of notes convertible into par funds. 2d, more danger of suspicion attaching to him as the thief. The mere possession and attempt to use so large an amount of Georgia bank notes, all of the denomination of five dollars, would arouse the suspicion of those who knew that Strout had lost just that kind of money. I think it would be no such difficult matter as opposing counsel supposes, for any gentleman in Mississippi having $200 or $300 of Georgia bank notes on hand, to tell where he got them, certainly easier than in the case put by him, of my being suddenly called on to show how I came by a current five-dollar bill in my pocket at this time.

In regard to the case of *Van Buren*, 24 Miss. R., cited by me, and charged to be a *dictum* of the judge delivering the opinion, in the point to which it was cited, I claim that it is an express authority, recognizing and adopting the doctrine I have cited from the text-book. The court say that no objection is made to the admission of that part of the evidence of the witness detailing the conduct and action of the prisoner in pointing out the whiskey and sugar. These were facts which it was certainly competent to prove. It is urged that as no objection was made in the court below to the admission of these facts, they were not presented in this court—were *coram non judice*, and hence what is said of that matter is a dictum. Well, I was counsel for the prisoner in the court below, and know that the reason why no objection was made to their admission in evidence, is the very one given by the court here, because "they were facts which it certainly was competent to prove."

In reference to *Jordan's case*, 32 Miss. R., relied upon as a direct authority against me, and against the dictum of Judge Yerger, as it is called, in *Van Buren's case*, I have nothing to add to what I said in my oral argument. It is always an ungracious task to indulge in criticism upon an opinion, before the court which delivered it. I am perfectly willing to trust this enlightened court to

review that opinion, when it is suggested that possibly it may have gone beyond the true rule. If it has, its own discrimination will be much more apt than my poor powers of analysis to detect it, and its enlightened sense of justice will be sure to correct any errors it may detect.

On the point embraced in the objection to the second instruction, given on behalf of the State, I shall have very little to say, for the reason that almost everything I have said on the first point, viz., the alleged error in the admission of the evidence of Denny and Strout as to the confession or acts of plaintiff in error, is as applicable to this as to that point, the instruction assuming and being predicated upon the evidence of those witnesses. If their testimony was improperly admitted, on the point of plaintiff's confession or acts, the court will reverse for that reason. If properly admitted, I maintain that the instruction is correct. Because there was that presumption of guilt before spoken of, which, unexplained and unrebutted by plaintiff in error, was sufficient to warrant his conviction. I can refer on this point only to a single case, *Sartorious* v. *The State*, 24 Miss. 602. The ruling of this court on the second instruction given on behalf of the State in that case, settles, as I think, the whole question arising on the second error assigned in this case.

HANDY, J., delivered the opinion of the court.

The plaintiff in error was indicted and convicted for stealing certain bank bills of the denomination of five dollars, the property of one Ephraim Strout.

The grounds of error relied upon are:

1. The admission, as evidence in behalf of the prosecution, of certain acts of the accused in showing where a part of the stolen property was placed; which acts were done after, and in consequence of, his having made a confession of his guilt under such circumstances as to render that confession inadmissible.

2. The giving of the second instruction to the jury in behalf of the prosecution.

In relation to the first ground of error, it appears that two witnesses were introduced and testified in behalf of the State on the trial. The first of these was Strout, the owner of the stolen property, who testified that he lost one hundred and sixty dollars in

bank notes, of the Empire Bank of the State of Georgia; that the accused had been to his house on Saturday, the day before he missed the money; that the witness kept his money in a pocketbook, which he laid up behind the clock on the mantelpiece, and that the money was all in five-dollar bills; that witness at first thought the money was taken by some persons who were working about his house, but he afterwards suspected the accused of stealing it, and charged him with it. He further testified, that when he so charged him, which was about three weeks after the money was lost, he told the accused that if he would confess all about it, and tell where the money was, and give it up and leave the country, he would not prosecute him; and thereupon, that the accused told where the money was, and confessed having taken it. Upon motion of the accused, this testimony as to his statements and confessions, under the circumstances, was held by the court to be incompetent, and was excluded from the jury.

The witness was then asked by the district attorney to state *what the accused did in regard to showing the money;* and he testified that the accused went to the corn-crib and got ninety dollars of the money out of the crib and gave it to witness; that witness saw him get the money, and that it was all of the same kind that witness had lost, all in five-dollar bills, and that witness believed them to be his. The accused objected to this testimony as inadmissible; but it was permitted to go to the jury, and exception was taken thereto. And this is the first point to be considered.

It will be observed that none of the declarations or confessions made by the accused to this witness were permitted to go in evidence to the jury, and consequently no question arises as to the competency of such declarations, under the circumstances of the case. The testimony admitted went solely to the acts and conduct of the accused, in showing where the money was, and in producing and delivering it to the witness, and to the identification of the money shown and produced.

Whatever diversity of opinion may exist upon the question, whether confessions improperly obtained, and which are verified and corroborated by facts and circumstances afterwards found to be in accordance with the statement of facts made in the confession, are admissible in evidence on account of the corroboration, there

can be no doubt but that acts of the accused done in consequence of the inadmissible confession, and tending to show his guilt, should be received in evidence.     This was held in *Warickshall's case,* 1 Leach, 298; *Mosey's case,* Ib. 301; and it is stated by all the text-writers upon the subject as the correct rule.     2 Russ. on Cr. 863 (7th Amer. edit.); 1 Phill. Evid. 116 (4th Amer. edit.).     And it is also laid down, that it is competent to show that the witness was directed by the accused where to find the goods, and that they were found there accordingly, but not the acknowledgment of the accused that he stole them or put them there.     2 East Pl. Cr. 658; 2 Russ. Cr. 862.

In such cases it is not the confession of the party that is received in evidence against him, but the facts which are brought to light by his acts, and in consequence of his confessions.     It will not do to say that the acts having been brought about by improper means, are of the same character as confessions produced by the same means; that the influence which produced groundless confessions, might also produce groundless conduct; for when the acts of the accused point out and produce the stolen property in its place of concealment, that fact speaks for itself, and is inconsistent alike with the idea of falsehood and of innocence.     Property so concealed must be considered as in the custody of the accused, and his production of it is equivalent to its being found upon his person, or in his private keeping at his house; and in such cases, the finding or production of the property is evidence of guilt.     The testimony permitted by the court to go to the jury, was simply, in substance, that the witness charged the accused with stealing the money, and thereupon the accused showed the place where it was concealed, and produced and delivered it to the witness.     If the money produced was the same which was stolen from the witness, there cannot be a doubt as to the competency of the testimony.

Was the money, then, sufficiently identified?     The witness testified that the bills were all of the same bank, and of the same denomination as those lost by him, and that he believed them to be his. This correspondence, taken in connection with the number of them of so small a denomination, and the fact that the witness believed them to be his, would go far to cast a suspicion upon the possession by the accused.     But the fact that, upon being charged with steal-

ing them, as the money of the witness, he produced them from the place of concealment and delivered them to the witness, is conclusive of their identity.

We think, therefore, that this testimony was properly admitted.

The second witness introduced was one Denny, who testified in substance that, in consequence of promises of protection made by him, the accused acknowledged his guilt. This was ruled out upon the objection of the accused, and the witness was then requested to state what the accused did·in regard to the money. He testified that the accused, and witness, and one Matthis, went to the house of the accused, and that presently the accused went out of doors to get some fuel, and that witness remarked that he stayed a good while, and requested Matthis to go and see where he was; that Matthis went out, and presently there was a rap at the door, and Matthis told witness to come out there, and witness did so and went around the chimney where they were; that thereupon Matthis handed witness some money, and requested him to count it, which he did, and found there were fifty-five dollars in bank bills of five dollars, but witness did not know and could not state what banks they were on.

This testimony was objected to by the accused, but was permitted to go to the jury, and exception taken.

The facts here shown are quite different from those stated by the preceding witness. The bank notes referred to are not shown to have been in the possession of the accused, or that he had any connection with them. It simply appears that they were produced by Matthis, who handed them to the witness, requesting him to count them. Nothing is shown to explain why or how Matthis had possession of them, or why he handed them to the witness to count; nor is there anything to identify them with the notes stolen from the witness Strout. Giving to the facts stated by this witness all the force which they properly could have, they showed nothing tending to fix upon the accused the charge for which he was indicted; nor was there any other evidence to supply the vagueness and irrelevancy of the testimony. To give it any force against the accused, the jury would have had to indulge in unwarrantable conjectures to his prejudice.

It was, therefore, improperly admitted, and the objection to it should have been sustained.

The second instruction given in behalf of the State is as follows: "If the evidence satisfy the jury that Ephraim Strout lost bank bills, and that they, or a part of them, had been found in defendant's possession shortly after, in the absence of other evidence proving how defendant came into possession, they will find him guilty."

. The first objection taken to this instruction is, that it dispenses with the necessity of proving that the bank bills *were stolen* from the owner, in consequence of which the accused might have been convicted under the indictment, from the mere fact of possession of the bills unaccounted for, though they had been casually lost by the owner, and had not been stolen."

It is true the word *lost* is employed in the instruction, but that is a general word, which embraces a loss by stealing, or by any act of another, as well as by the act of the owner himself, or by casualty. The evidence tended strongly to show that the money was lost by stealing, and there was nothing tending to show that it was casually lost. The general term used in the instruction must be taken with reference to the charge against the accused, and the evidence offered in support of it, and must be understood with reference to such loss as the evidence tended to establish, which was by stealing. We do not consider the instruction erroneous in this respect, though it is true that the word *stolen* is more precise, and the better term to be employed. The phraseology could not have reasonably misled the jury, under the circumstances of the case.

It is further objected, that the instruction renders the possession of the bank bills by the accused, shortly after they were lost by the owner, conclusive evidence of guilt, whereas it merely creates a presumption of guilt. The general rule is undoubtedly well settled, that the possession by a party of stolen goods, shortly after their loss by the owner, is presumptive evidence of guilt, which, however, may be explained; and if the party in whose possession they are found, fails satisfactorily to account for his possession, the presumption of guilt, arising from the recent loss by taking and the possession, will stand and warrant a conviction. What will be sufficient to account for the possession, or to remove the presumption which may arise therefrom, will depend much upon the length of time which intervened between the loss by the owner and the discovery of possession in the party charged, the nature and character

Pope & Jacobs v. The State.

of the goods, and all the circumstances of the case; and this, for the most part, is to be determined by the jury. These points might have been made the subject of instruction at the instance of the accused, and the attention of the jury might have been thereby directed to the shortness of the time, as shown by the evidence, in connection with the nature of the articles. But as the instruction stands, it does not take these considerations from the jury, but leaves it open for the jury to determine the question whether the time shown was short, under the circumstances; and under it, that question might have been fully argued to the jury. If they were of opinion, from the circumstances—as it must be presumed they were—that the time of production of the money by the accused was sufficiently short to raise the presumption of his guilt, and there was no explanation of his possession, the presumption of fact was not removed; and they were properly instructed that, in such case, they should find a verdict of conviction. This was the substance of the instruction, and we consider the general proposition contained in it correct.

For the error in admitting the testimony of the witness Denny, the judgment must be reversed, and the cause remanded for a new trial.