## Jackson v. State.

[79 South. 809, Division B.]

BURGLARY. *Evidence. Sufficiency.*

Where in a prosecution for burglary and larceny, the prosecutor testified that the goods found did not have any private mark on them, but they were all like the kind of goods he had in his store, that he could not swear positively as to the quantity of goods he had lost, nor that the goods found were his, and it was further shown that when arrested, the defendant explained how he came in to the possession of the goods, and there was no proof contradicting such explanation. In such case, the evidence was not sufficient to convict.

APPEAL from the circuit court of Lauderdale county. Hon. R. W. HEIDLEBERG, Judge.

Sid Jackson was convicted of burglary and appeals. The facts are fully stated in the opinion of the court.

*S. M. Graham,* for appellant.

*Earle N. Floyd,* Assistant Attorney-General, for the state.

ETHRIDGE, J., delivered the opinion of the court.

Sid Jackson was indicted for burglary and larceny and was convicted on said charge in the circuit court. The indictment charges that the defendant did unlawfully, feloniously, and burglariously, break and enter in the nighttime a storehouse of one J. E. Gilbert with intent to steal therein, and did then and there unlawfully, feloniously, and burglariously take, steal, and carry away certain described goods set out in the indictment of the value of three dollars and ninety-five cents. The proof shows that the store of J. A. Gilbert, merchant in the city of Meridian, was burglarized in the summer of 1915 and certain groceries taken there-

from.  Mr. Gilbert was introduced as a witness and testified that the store was broken and entered into, and was asked the following questions:

"Q. Now the goods that the officers found; were you able to identify those goods?  A. To a certain extent, I was.  I lost some stuff of that same brand and stuff, but I didn't have any private marks on them. Q. Well, would you swear that is your stuff?  A. I couldn't swear positive that was my stuff.  Q. But your best judgment is that it was?  A. Yes, sir.  Q. Now tell the jury why you think it was?  A. Well, I had lost the stuff the night before like that, and this negro woman got up and testified— Q. wait a minute— A. Well, I had lost some stuff the night before that just exactly like that.  Q. The same quantity?  A. 1 couldn't swear to exactly the quantity that I lost."

Ed Holden, a policeman, testified: That he was on police duty at West End, and that Mr. Gilbert furnished the chief of police with the list of groceries that he had lost.  That the chief turned the list over to him, and he had been watching the house of two negro women and had occasion to go into the house of these women that night to make them quit fussing, and while there he went into the kitchen and saw meat and lard, and got out his list and found stuff of the kind itemized in the list he had; that he arrested the two negro women, and they at once told him that Sid Jackson brought the goods there.  That Sid Jackson was not at the house, and that he left Mr. Clinton in charge of the two women and went down to Jack Hall and found Sid there and arrested him and carried him back up there.  Then he was asked the questions:

"Q. What did he tell you about this stuff?  A. He told me—he admitted having the goods, but he had bought it from two white boys down on Thirty-Eighth avenue near old Gulfport.  Q. Did he tell you who the white boys were?  A. My recollection is now he said Picket Morris and one of the Wells boys.  Q. How old

was Picket Morris?　A. I guess he was seventeen or eighteen years old.　Q. So he admitted carrying the goods there? A. Yes, sir.''

The state rested on this testimony, and the defendant testified that he bought the goods in question from two boys on a Wednesday night between 9 and 10 o'clock; that the two white boys were going on a camp fishing, and it had been raining, and they offered to sell him all the stuff they had for two dollars; that he did not have two .dollars, but he bought one dollar and twenty-five cents worth of the stuff and gave it to the girl the same night.

The defendant appears from the record to have had no counsel in the court below, and when the state closed its testimony the district attorney said to him, ''You don't have to testify, and you don't have to say anything unless you want to.'' Whereupon the court said:

''You don't have to say anything on the trial of this case, and you don't have to tell the jury anything, unless you want to. If you want to, you have got a right to.''

It will be noted from the above evidence that the state's witness Mr. Gilbert stated that the goods found did not have any private mark on them, but they were all like kind of goods he had in his store; that he could not swear postively that they were his goods, neither could he swear as to the quantity of the goods he had. It will be further noted from the policeman's testimony that when arrested the defendant made an explanation of how he came into possession of the goods, and there was no proof introduced to show there were no such boys as those named by the witness, and there was no evidence from such boys to contradict what the defendant said about the matter.

We think this testimony wholly insufficient to sustain a conviction. It does not appear from the evidence that the goods stolen from Mr. Gilbert's store were

different in kind and character from like goods sold by other grocers in the community. Indeed, so far as this record shows, such goods may have been sold by numerous other people in the community. There were no private marks or methods of identifying the goods.

We think the evidence was insufficient to convict the defendant, and, as it appears that all of the available testimony was submitted to the jury, we think the court should have granted a jury and verdict for the defendant and discharged him.

The judgment of conviction is, accordingly, reversed, and the appellant discharged from custody.

*Reversed.*