FLETCHER *v.* STATE.

(Division B.   Dec. 11, 1933.)

[151 So. 477.   No. 30932.]

Roy Stockdale, of Greenville, for appellant.

**W. D. Conn, Jr.,** Assistant Attorney-General, for the state.

**Ethridge, P. J.,** delivered the opinion of the court.

Appellant, E. L. Fletcher, was indicted, tried, and convicted of grand larceny in the stealing of a Guernsey heifer from G. B. Walker, and was sentenced to serve three years in the state penitentiary.

G. B. Walker was the owner of a herd of Guernsey, registered, cattle, and the heifer stolen was about two years old, and was valued at two hundred dollars.

On the morning of May 22, 1933, this heifer was found by Lewis Taylor, a butcher in Greenville, Mississippi, tied to the fence of his slaughter pen. As cattle were frequently brought there for slaughter, he took the heifer and placed her in his lot. Mee Son, a Chinese grocer and market man in Greenville, came to the slaughter pen and directed Taylor to butcher the heifer, which was done. Mee Son testified: That Fletcher (appellant here) came to his home before he had gotten up on the morning of May 22, and that Mee Son's wife told Fletcher he was not up, and instructed him to take the heifer to the slaughterhouse. This Fletcher did, and then returned to the store of the Chinese and waited until the said Mee Son awoke. Mee Son then went to the slaughterhouse to inspect the heifer, and on returning to the store took up with Fletcher the question of price. That Fletcher insisted on twenty dollars, which Mee Son refused to pay, offering to pay fifteen dollars, which was paid to Fletcher by check, and Mee Son then instructed the said Lewis Taylor to butcher the heifer. The heifer being missed from the herd, search was instituted, and the hide was found at a hide and fur company in Greenville, and was admitted, by counsel for the appellant, to be the hide from the heifer owned by Walker.

Lewis Taylor testified that he went to his place of business between five and six on the morning of May 22, 1933, fixing the time by the blowing of a whistle in Greenville, which blew regularly at a given time, and that when he arrived the heifer was tied to his fence, as stated.

A warrant for the arrest of Fletcher was sued out, and on being arrested, he stated to the deputy sheriff that he had bought the heifer from a negro named Alex Harris, who said he lived on Willowdale Plantation, and appellant asked the deputy sheriff to try to locate Alex

Harris. The deputy sheriff made inquiry, but found no one by that name, nor did any one know of any such man in that neighborhood.

The appellant testified that on Sunday, May 21, 1933, about 2:30 P. M. a negro man came to his place at Metcalfe, Mississippi, four miles from Greenville, and asked him if he wanted to buy a cow. Appellant said he would trade for one, and was supported in this testimony by his wife, and by another man and his wife who were visiting the Fletchers. They described the negro, Alex Harris, as being black, with a slight mustache, weighing about one hundred forty-five pounds, and being about forty or forty-five years old. The appellant further testified that he got up early the next morning, had breakfast, and started to the negro's house who had been to his house Sunday, met him with the heifer, bought it, and led it to Greenville, reaching there about seven or seven-thirty; that he had paid Alex Harris twelve dollars and fifty cents for the heifer, and when he reached Greenville, he called at Mee Son's place and sold the heifer to him for fifteen dollars; that he did not know the value of the heifer; and that Mee Son, being in the market business, had told him to be on the lookout for beef cattle for the market.

The state introduced a negro named Alex Harris, and appellant stated that this was not the negro who sold him the heifer. Several persons testified that they knew no other negro named Alex Harris in Greenville and vicinity.

The appellant introduced Mrs. Zelma W. Price, an attorney at law in Greenville, who testified, at first, that there were two negroes which she knew named Alex Harris; that she had been consulted about defending a negro who had a brother named Harris, and she thought he was Alex Harris; but, after consulting with her client, she found that this other party was named Phil Harris, and not Alex Harris.

It is argued for the appellant that the above testimony is not sufficient to sustain the conviction, and that he should have had a peremptory instruction under the principles announced in the following cases: Hogan v. State, 127 Miss. 407, 90 So. 99; Algheri v. State, 25 Miss. 584; Jackson v. State, 118 Miss. 602, 79 So. 809; and other decisions bearing out the rule.

It will be seen, from the testimony, that the heifer was, admittedly, stolen. The appellant's version as to how he came into possession thereof is not reasonable. At least, the jury had a right to consider it unreasonable. The heifer was taken by the appellant early in the morning, prior to six A. M., according to Taylor's testimony, to Greenville, and it must have required something like one hour to lead a cow four or five miles; and buying the cow from a strange negro, as the appellant did, was not the act of a reasonable man.

We think the evidence was ample to sustain the conviction.

The appellant next complains that the court erred in giving the following instruction: "The court instructs the jury that the possession of property recently stolen is a circumstance which may be considered by the jury and from which, in the absence of a reasonable explanation, the jury may infer guilt of larceny."

It is urged that the explanation above given was reasonable; but, taking all the circumstances into consideration, it is not a reasonable explanation of the possession of property, and certainty not when the property is a blooded heifer, purchased at so small a price, from an utterly strange negro, before daylight, although the negro may have discussed the sale of this heifer on the preceding day. If a mere statement of how the appellant came into possession of stolen property must be accepted as true, there would never be any application of the principles involved in the instruction.

We find no reversible error in this case, and the judgment will be affirmed.

Affirmed.