HUDDLESTON v. STATE.

March 8, 1954

No. 39044 56 Adv. S. 28 70 So. 2d 621

*R. S. Tullos,* Raleigh, for appellant.

*John E. Stone,* Asst. Atty. Gen., Jackson, for appellee.

KYLE, J.

The appellant was indicted, tried and convicted in the Circuit Court of Smith County on a charge of burglary, and was sentenced to the state penitentiary for a term of seven years. From that judgment he prosecutes this appeal.

The testimony of the State's witnesses showed that the building owned by the Standard Oil Company of Kentucky and occupied by Joe Stringer, as bulk sales agent, in the Town of Taylorsville, was burglarized during the

early morning hours of Sunday, December 3, 1950, and an iron safe belonging to Stringer, in which money, checks and other valuable papers were kept, was taken and carried away. Stringer testified that there was money in the amount of several hundred dollars in the safe at the time of the burglary; and there were also checks and courtesy cards, insurance policies, books of account and other valuable papers, and also an old, double barrel derringer pistol, which was an heirloom that belonged to Stringer's grandfather. Stringer testified that he had recently had the pistol repaired, that he had put a homemade pin in it, and that there were file marks on the underpart of the barrel.

Stringer learned that the station had been burglarized Monday morning. As he entered the building he saw that the brass lock on the outside door had been broken, and that the iron safe had been stolen. He also observed that a grass mat that was kept on the outside of the door was missing. He immediately notified the sheriff at Raleigh, and the sheriff in turn notified the State Highway Patrol and the chief of police of the City of Laurel.

In the meantime, Sheriff Dabbs of Clarke County, had arrested the appellant and two other boys just outside of the Town of Quitman and had locked them up on charges of drunkenness. The appellant had paid a fine and had been released. But, while he was under arrest, the sheriff had taken from him a double barrel derringer pistol, which Stringer later identified as the pistol that he kept in the safe at the bulk sales station at Taylorsville.

After being informed of the burglary at Taylorsville the Clarke County Sheriff drove to Laurel for the purpose of assisting the other officers in the investigation of the burglary. There he learned that the Smith County officers were also on the lookout for a Ford pickup truck that had been stolen in the Town of Taylorsville about the time the burglary had been committed. The sheriff stated to the other officers that he had seen a Ford pickup truck parked across the street from the railroad sta-

tion in the Town of Quitman during the day; and the sheriff and a highway patrolman returned immediately to the Town of Quitman and found the pickup truck. In the truck they also found a floor mat and a broken brass lock with the words "Property of Standard Oil Company" inscribed upon it. Stringer identified the floor mat and the lock as a part of the property taken from the bulk sales station.

The appellant was apprehended three or four days later in Bemonette, Alabama, and was brought back to Mississippi and placed in the Jones County jail. At the time of his arrest in the State of Alabama, he was traveling in a Ford automobile, in which the officers found a long sledge hammer and two .41 derringer cartridges or shells. After the appellant had been brought back to Laurel, the chief of police asked the appellant where he got the derringer pistol, and the appellant replied that he got it at a honky tonk near Meridian; but the appellant was unable to give the name or a description of the person from whom he got the pistol.

The iron safe which had been stolen from the bulk sales station was found in a creek a day or two later about one mile east of Sandersville, not far from the home of appellant's father. There were car tracks near the creek bank which showed that a car or truck had been backed into the place where the safe was unloaded. The door of the safe had been torn off. Checks and other papers bearing Stringer's name were picked up a few feet below the point where the safe was found.

The sheriff of Smith County testified that he made a detailed examination of the burglarized premises the day after the crime had been committed, and that he found footprints on the floor in the corner of the room where the safe was kept, which showed the markings of a "Cat's Paw" half sole; and after the appellant's arrest the officers observed that the appellant was wearing shoes that had "Cat's Paw" half soles.

The appellant offered no testimony in his own behalf.

The main point argued by the appellant's attorney as ground for reversal of the judgment of the lower court is that the evidence was insufficient to justify the verdict of the jury, and that the court erred in refusing to grant the peremptory instruction requested by the appellant at the conclusion of testimony of the state's witnesses. The appellant says that the only thing that connected him with the commission of the crime was the pistol that was taken from him in Clarke County. But the state's evidence tending to prove that the appellant had a part in the burglary was not limited to the proof of possession by the appellant of the recently stolen pistol. The testimony of the officers, when considered as a whole, presented a network of circumstantial evidence pointing to the appellant's guilt, which, in our opinion, was sufficient to warrant the jury's finding that the appellant was guilty as charged. And there was no error in the action of the lower court in refusing to grant the peremptory instruction requested by the appellant.

 It is next argued on behalf of the appellant that the court erred in instructing the jury for the state that: "The possession of recently stolen property unexplained raises a presumption of guilt of the person so in possession, which presumption may be considered along with all the other evidence in the case by the jury." But there was no error in the granting of that instruction. This Court has held in numerous cases that an instruction of that kind is proper. Belote v. State, 36 Miss. 96, 72 Am. Dec. 163; Jones v. State, 51 Miss. 718, 24 Am. Rep. 658; Snowden v. State, 62 Miss. 100; Fletcher v. State, 168 Miss. 361, 151 So. 477; Lott v. State, 204 Miss. 610, 37 So. 2d 782.

 The appellant also complains that the court erred in refusing to grant an instruction requested by him to the effect that the circumstantial evidence in the case "should be weighed with great care and caution in passing upon the rights of the defendants." We think that

the court's action in refusing to grant the above mentioned instruction in the form requested did not constitute reversible error.

In Porter v. State, 57 Miss. 300, the Court said:

"Proof by circumstances has been admitted in all ages of the common law. That kind of proof is frequently of the highest credibility, and warrants courts and juries in acting on its truth in the most important concerns of human life. It is frequently the only proof accessible, and to dispense with it when it is sufficient to generate a full conviction of the truth of the proposition it is offered to substantiate would be to deprive the courts of a most important and useful means of arriving at just and proper conclusions as to matters of fact to be tried before them."

See also Alexander, Mississippi Jury Instructions, Vol. 1, Section 1501.

The instruction on circumstantial evidence which the court refused to grant in this case was entirely unlike the instruction which the Court approved in Petty v. State, 83 Miss. 260, 35 So. 213. The instruction which the court refused to grant in this case did not attempt to define the degree of proof required to support a conviction on circumstantial evidence, or to explain to the jury the nature of the caution to be exercised by the jury in weighing the facts which were to be taken into account in determining whether the proof was sufficient to justify a conviction, as was done in the instruction requested in the Petty case. The instruction which the Court refused to grant in this case represented merely a comment upon the weight of the evidence. In the instruction granted to the State, the State assumed the burden of proving the appellant's guilt beyond every reasonable doubt and to the exclusion of every other reasonable hypothesis consistent with the appellant's innocence; and we think that the court's action in refusing to grant the above men-

tioned instruction requested by the appellant did not constitute reversible error.

The judgment of the lower court is therefore affirmed.

Affirmed.

*Roberds, P. J.,* and *Hall, Lee* and *Gillespie, JJ.,* concur.