418 So.2d 749 (1982)
Stephen ROBINSON
v.
STATE of Mississippi.
No. 53257.
Supreme Court of Mississippi.
February 10, 1982.
Rehearing Denied July 28, 1982.
Brewer, Deaton, Evans & Bowman, Billy B. Bowman, Greenwood, for appellant.
Bill Allain, Atty. Gen. by Carolyn B. Mills Sp. Asst. Atty. Gen., Jackson, for appellee.
Before PATTERSON, C.J., and BROOM and DAN M. LEE, JJ.
En Banc.
DAN M. LEE, Justice, for the Court:
This is an appeal from the Circuit Court of Leflore County wherein Stephen Robinson, defendant/appellant, was indicted, tried and convicted for the September 16, *750 1980, burglary of Goldberg's Store located in Greenwood, Mississippi. Upon conviction, Robinson was sentenced to serve five years in the custody of the Mississippi Department of Corrections. Aggrieved of his conviction, Robinson has appealed to this Court and assigns four errors in the trial below.
1. The verdict of the jury was contrary to the overwhelming weight of testimony and the law.
2. The court erred in not entering a directed verdict for the appellant.
3. The court erred in denying the appellant's motion to suppress, thus allowing the state to introduce into evidence the three pairs of shoes taken from the display window of Goldberg's Shoe Store.
4. The court erred in giving, over the appellant's objections, the state's requested Instruction No. 2.
Goldberg's Shoe Store, located in Greenwood, Mississippi, was burglarized sometime between 11:05 p.m. and 12:39 a.m. on September 15 and 16, 1980. A large display window was broken out, apparently with a piece of concrete, and eight pairs of shoes removed therefrom. The owner reported the shoes taken from the store were manufactured by Pierre Cardin and Florsheim.
Thomas G. Futral, detective sergeant of the Greenwood Police Department, discovered the burglary at 12:39 a.m. He was unable to obtain fingerprints from the window itself or the item used to break the glass. Futral remained on the scene for twenty or twenty-five minutes at which time he was called to investigate an automobile accident at Mabeline and Third Avenue. When Futral arrived on the scene of the accident at approximately 1:00 a.m., appellant, who stated he was driving the 1973 Monte Carlo which struck the rear of a parked pickup truck, was boisterous and smelled of alcohol. Officers investigating the accident arrested appellant for public drunkenness and summoned a wrecker to remove the Monte Carlo which was rendered inoperable by the collision. Futral, who was taking pictures of the accident, began to inventory the contents of the automobile, which was standard procedure used by the police department to avoid lawsuits. When the trunk was opened, three new pairs of shoes were discovered therein, corresponding to the brands that had been reportedly taken in the Goldberg burglary. Appellant was then advised he was also being arrested for burglary. Subsequent investigations revealed the shoes were the same as those taken in the Goldberg burglary.
Appellant denied any participation in or knowledge of the burglary. According to him, he borrowed his brother's automobile after getting off work around 6:00 or 7:00 p.m. He began drinking and riding around. Around 10:00 p.m., he picked up Milton Johnson, a cousin, rode around about forty-five minutes and then went to the Soul Train Lounge where he stayed for one and half or two hours. Around 1:00 a.m. defendant left the lounge to take Sylvester Hodges home and then returned to the lounge and left with Milton Johnson, who was injured in the accident. Johnson asserted it was around 11:00 p.m. when defendant took Hodges home and he was gone for about ten minutes. Hodges stated it was about 12:30 a.m. Both Johnson, a co-indictee, and Hodges denied any knowledge of or participation in the burglary.
The jury found appellant guilty as charged, whereupon he was sentenced to a term of five years in the penitentiary.

I. Did the trial court err in overruling defendant's motion for a directed verdict at the close of the state's case and was the verdict of the jury contrary to the overwhelming weight of the evidence?
Although appellant complains of the overruling of his motion for a directed verdict, he waived any error thereof by adducing evidence in his own behalf. In Tubbs v. State, 402 So.2d 830 (Miss. 1981), this Court stated:
At the conclusion of the State's case, Tubbs moved to exclude the evidence and direct a verdict of acquittal as to the *751 underlying charge of robbery, and assigns as error the action of the trial judge in overruling his motion. After the motion was overruled Tubbs presented evidence in an attempt to establish an alibi defense and is thereby precluded from raising any issue on appeal with regard to the denial of his motion for a directed verdict. Lucas v. State, 381 So.2d 140 (Miss. 1980); Watts v. State, 317 So.2d 715 (Miss. 1975); Hankins v. State, 288 So.2d 866 (Miss. 1975). (402 So.2d at 835)
As to appellant's contention concerning the sufficiency of the evidence, he avers that the jury completely ignored the overwhelming testimony of his witnesses concerning his presence except for a brief period and therefore convicted him solely on the inference arising from possession of recently-stolen property. Evidently, appellant overlooks the fact that it was the jury's prerogative to accept the testimony it deemed to be more trustworthy and reject that it deemed was not. In Tubbs, supra, this Court said:
Tubbs' defense was an alibi and it is well established that a jury is not under a duty to accept an alibi defense, but must consider all of the testimony in determining the guilt or innocence of an accused. An alibi defense presents a question of fact to be resolved by the jury. In Spikes v. State, 302 So.2d 250 (Miss. 1974), we stated:
"The jury was not required to accept this alibi. Its duty was to evaluate the testimony of the witnesses for the State and defendant, and to determine whether the evidence showed beyond a reasonable doubt that appellant was guilty. The State's evidence was contradictory of that of appellant concerning an alibi. It was a jury issue. Newton v. State, 1956, 229 Miss. 267, 90 So.2d 375. (Kelly v. State, 239 Miss. 683, 690, 124 So.2d 840, 842 (1960). (302 So.2d at 251)"

Accord, Johnson v. State, 359 So.2d 1371 (Miss. 1978).
(402 So.2d at 834-35)
In the case at bar it is evident that the jury rejected the testimony of appellant's two witnesses. Milton Johnson, who was on parole at the time of the incident, was certainly questionable, being related to the defendant, and also charged with the same crime. Sylvester Hodges, with whom appellant left the Soul Train Lounge for a short period of time, was evidently the only other person who could have participated in the crime that night and he certainly wasn't going to implicate himself. Furthermore, appellant never asserted anyone else had control over the automobile besides himself from the time he borrowed the same until the shoes were subsequently discovered therein.
In Gray v. State, 387 So.2d 101 (Miss. 1980), this Court stated:
In Carroll v. State, 196 So.2d 878 (Miss. 1967), this Court said:
"In reviewing the sufficiency of the evidence to support the verdict, this Court must accept as having been established all that was proved by the evidence, as well as all that such evidence reasonably tended to prove, together with all reasonable inferences to be drawn therefrom, favorable to the theory of the prosecution.
* * * * * *
"The jury's verdict had the effect of resolving all conflicts in the evidence against appellant, and the findings of the jury, as the trier of facts, are conclusive upon this Court. (196 So.2d at 883)."
(387 So.2d at 103)
Accepting all that was proved by the state's evidence, as well as that such evidence reasonably tended to prove, together with all reasonable inferences to be drawn therefrom, this Court finds the evidence was sufficient to support the verdict of the jury.

II. Did the trial court err in failing to suppress the shoes taken from the trunk of the automobile appellant was driving?
At the hearing on the motion to suppress, it was established that the Greenwood Police Department generally adhered *752 to an unwritten policy of inventorying the contents of automobiles where the driver of the same was arrested. The inventory was a method whereby the police department sought to avoid lawsuits involving items which were subsequently alleged missing from automobiles taken into custody by the police department. Moreover, the importance of the inventory was escalated by the fact that the cars were towed to private lots due to the fact that the city did not have a garage or lot to house impounded cars.
The inventory of property lawfully seized falls into a different category from that of an automobile search incident to a lawful arrest or based on probable cause that the vehicle is being used to transport contraband. Jackson v. State, 261 So.2d 126 (Miss. 1972). Here it was undisputed that the defendant was not suspected of any crime before the inventory was conducted and the articles discovered therein. In Jackson v. State, 243 So.2d 396 (Miss. 1970), this Court discussed inventory searches:
Although not necessary to this opinion, the question will doubtless be raised on retrial that probable cause did not exist for the search of the appellant's car. After consideration, we think the trial court correctly held that the boxes and their contents should not be excluded from evidence as the result of the search. We are of the opinion the car was inventoried in accord with lawful police practices. In Wright v. State, 236 So.2d 408, 412 (Miss. 1970), we held:
"* * * However, we do not here pass upon whether or not it is ordinarily the official duty of an officer to preserve the property of a person arrested  see Toliver v. State, 133 Miss. 789, 98 So. 342 (1923)  although it may be said that the trend of authorities is moving in that direction  see 32 A.L.R. 685 (1924). It is, nevertheless, the practice of police officers to inventory the personal belongings taken from a prisoner and to put them in a place for safekeeping. This is usually done in the presence of the prisoner and a witness so that the prisoner may not later contend that his money and other belongings were confiscated by the officers.
"The duty of the officers to search the person of the defendant in the instant case and the right of the officers to inventory and keep the personal effects of the prisoner was proper under the facts here shown."
See also Gordon v. State, 222 So.2d 141, 144 (Miss. 1969), where we stated:
"* * * Since it was the duty of the officers to hold the automobile as evidence until the participants could be indicted and tried, it would be unreasonable to hold that for their own protection the officers did not have the duty to search the automobile. They were responsible for all the contents of the car and in order to properly account for such contents they had to inventory and preserve them. Appellant urges that the officers could have procured a search warrant and searched the car after it was moved to the patrol headquarters, however, that is not the test. The test is whether the search was reasonable. As a means of precaution it is always better for the officers to procure a search warrant for the search after the arrest has been effected and the vehicle moved from the scene of the arrest, but under the facts and circumstances of this case a search without a search warrant was reasonable. * * *"
See also Godbee v. State, 224 So.2d 441 (Fla.App. 1969), a well-reasoned opinion from which we quote with approval the following:
"* * * The reasonableness of any search without a warrant is measured from the standpoint of the conduct of the searchers. If their conduct is in some way reprehensible; or if they precipitate a search and are motivated therein solely by a desire to "hunt" for incriminating evidence; or if they do so without any plausible explanation or justification; the invasion is an unreasonable one. Here the tests have been met, and there is no evidence in this record from which it can be said that the officers did not act in *753 good faith and in the prudent discharge of their official duties. There [was] ample justification for taking the car into custody in the first place, and reasonable cause to inventory it. The trial court was correct in denying the motion to suppress. (224 So.2d at 443.)"

Accord Cooper v. California, 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967). We conclude that the inventory of the appellant's automobile was reasonable in its inception, a proper police practice, and that there was probable cause for the ensuing search subsequent to the discovery of the substance charged to be marijuana.
(243 So.2d at 398-99) (emphasis added.)
Officer Futral conducted an inventory search of the appellant's borrowed automobile shortly after his arrest by another officer for public drunkenness while the vehicle was still located at the scene of the accident. Officer Futral referred to it as an inventory search contemporaneous with allowing the wrecker service to remove the damaged automobile to a parking lot operated by the wrecker service. Officer Futral inventoried the interior of the automobile and found nothing except two or three eight-track tapes and then opened the trunk and found two pairs of new shoes lying in the trunk in plain view, which were later identified to be the shoes taken from Goldberg's store in a burglary that was committed no more than an hour and thirty-four minutes prior thereto. Officer Futral was called to the scene of the accident directly from the investigation of the Goldberg burglary, primarily because he had possession of the camera that was used by the Greenwood Police Department for taking pictures in accidents and for other purposes. Futral had no idea there was any connection between the 1973 Monte Carlo involved in the accident and the Goldberg burglary. The inventory conducted by Futral and other officers was a routine procedure followed by the Greenwood Police Department since 1968 and no wise carried out to circumvent any search requirements of the Fourth Amendment. This was established by Officer Futral and Chief of Police James Stevens of Greenville, Mississippi. In ruling upon the motion to suppress, the trial judge stated:
The Court is of the opinion that the police acted properly in this case; that had they done anything other than what they did, that is, open the car to try to find if any valuables were there, they would have been neglecting their duty.
What impresses the Court most about this is the fact that there was absolutely no apprehension on the part of the police that these two people who were in this wreck had anything to do with any crime, and that the reason for the opening of the trunk was non-crime related in any way to the incident for which they are now charged or for any other crime, to the Court's knowledge, and certainly not from what I've heard of the testimony.
Appellant contends that opening the trunk without a warrant was a violation of his Fourth Amendment rights. The appellee relies upon the rule announced in South Dakota v. Opperman, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976), and contends that the police officers here were making a routine inventory of the contents of the vehicle, a reasonable procedure not a violation of the Fourth Amendment. The accused's automobile in Opperman had been impounded for multiple parking violations and the police, following standard procedure, inventoried the contents of the car. In so doing, they discovered marijuana in the glove compartment. Opperman was subsequently arrested and convicted for possession of the contraband. His motion to suppress the evidence from the warrantless inventory was denied. The State Supreme Court reversed on the ground that the evidence had been obtained in violation of the Fourth Amendment. In reversing that decision, the United States Supreme Court held that the police procedures followed there did not involve an unreasonable search in violation of the Fourth Amendment, that the expectation of privacy in one's automobile is significantly less than that in one's own home or office. The Court further held that when vehicles are *754 impounded, police routinely follow caretaking procedures by securing an inventory of the car's contents, and such procedures are reasonable under the Fourth Amendment. The United States Supreme Court in Opperman, supra, said:
When vehicles are impounded, local police departments generally follow a routine practice of securing and inventorying the automobiles' contents. These procedures developed in response to three distinct needs: the protection of the owner's property while it remains in police custody. United States v. Mitchell, 458 F.2d 960, 961 (CA9 1972); the protection of the police against claims or disputes over lost or stolen property, United States v. Kelehar, 470 F.2d 176, 178 (CA5 1972); and the protection of the police from potential danger, Cooper v. California, supra [386 U.S.] at 61-62, 87 S.Ct. 788 [at 790-791] 17 L.Ed.2d 730. The practice has been viewed as essential to respond to incidents of theft or vandalism. See Cabbler v. Commonwealth, 212 Va. 520, 522, 184 S.E.2d 781, 782 (1971), cert. denied, 405 U.S. 1073, 92 S.Ct. 1501, 31 L.Ed.2d 807 (1972); Warrix v. State, 50 Wis.2d 368, 376, 184 N.W.2d 189, 194 (1971). In addition, police frequently attempt to determine whether a vehicle has been stolen and thereafter abandoned.
These caretaking procedures have almost uniformly been upheld by the state courts, which by virtue of the localized nature of traffic regulation have had considerable occasion to deal with the issue. Applying the Fourth Amendment standard of "reasonableness," the state courts have overwhelmingly concluded that, even if an inventory is characterized as a "search," the intrusion is constitutionally permissible. See, e.g., City of St. Paul v. Myles, 298 Minn. 298, 300-301, 218 N.W.2d 697, 699 (1974); State v. Tully, 166 Conn. 126, 136, 348 A.2d 603, 609 (1974); People v. Trusty, 183 Colo. 291, 296-297, 516 P.2d 423, 425-426 (1973); People v. Sullivan, 29 N.Y.2d 69, 73 [323 N.Y.S.2d 945, 947-49] 272 N.E.2d 464, 466 (1971); Cabbler v. Commonwealth, supra, Warrix v. State, supra, State v. Wallen, 185 Neb. 44, 173 N.W.2d 372, cert. denied, 399 U.S. 912, 90 S.Ct. 2211, 26 L.Ed.2d 568 (1970); State v. Criscola, 21 Utah 2d 272, 444 P.2d 517 (1968); State v. Montague, 73 Wash.2d 381, 438 P.2d 571 (1968); People v. Clark, 32 Ill. App.3d 898, 336 N.E.2d 892 (1975); State v. Achter, 512 S.W.2d 894 (Mo. App. 1974); Bennett v. State, 507 P.2d 1252 (Okl.Cr.App. 1973); People v. Willis, 46 Mich. App. 436, 208 N.W.2d 204 (1973); State v. All, 17 N.C. App. 284, 193 S.E.2d 770, cert. denied, 414 U.S. 866, 94 S.Ct. 51, 38 L.Ed.2d 85 (1973); Godbee v. State, 224 So.2d 441 (Fla. Dist. Ct. App. 1969). Even the seminal state decision relied on by the South Dakota Supreme Court in reaching the contrary result, Mozzetti v. Superior Court, 4 Cal.3d 699 [94 Cal. Rptr. 412], 484 P.2d 84 (1971), expressly approved police caretaking activities resulting in the securing of property within the officer's plain view.
(428 U.S. at 369-371, 96 S.Ct. at 3097-3098, 49 L.Ed.2d at 1005-06)
In a later case, United States v. Edwards, 577 F.2d 883 (5th Cir.1978), the Fifth Circuit Court of Appeals, citing Opperman, supra, stated:
Our reading of Opperman, however, has led us to conclude that an inventory search may not be unlimited in scope. Once again, we are guided by the standard of reasonableness. Only so long as the scope of the search is reasonable, taking into consideration the three interests to be protected by the inventory, will it be held to be a constitutionally permissible intrusion. The complete dismantling of an automobile, or parts thereof, for example, would not withstand constitutional scrutiny because such action would not reasonably serve to promote or further the interests which justify an inventory search. Rather, the three interests set forth in Opperman can be adequately protected if the inventory search is limited in scope to those places within the interior or trunk of an automobile where, under the particular circumstances of the case, property of the owner or occupant can reasonably be expected to *755 be found. The standard we advocate is necessarily flexible and is to be applied on a case by case basis, but it nevertheless adheres to the constitutional mandate that only unreasonable searches and seizures are prohibited.
The potential abuse inherent in the inventorial process, and the concomitant need to limit its scope, was recognized in this Circuit prior to sanction of the inventory search by our highest court in Opperman. We made the following observations in United States v. Gravitt, 484 F.2d 375, 380-81 (5th Cir.1973), cert. denied, 414 U.S. 1135, 94 S.Ct. 879, 38 L.Ed.2d 761 (1974):
"We are conscious, too, of the possibility that the police, in some circumstances warranting some limited form of inventory search, may often conduct searches which range beyond what is required by any legitimate police need ... But we are confident that here, as in other contexts, reviewing courts will be fully capable of assuring that the scope of the intrusions will be tailored to the specific public interests which lie at the root of the finding that the intrusions are reasonable."
We now turn to the facts of this case to determine whether the inventory search was reasonable. There can be no doubt that the search was thorough. The record reveals that the officers searched the glove compartment, the trunk, under the seats, and even the crevices between the seats. However, we refuse to necessarily equate thoroughness with unreasonableness. The reasonableness of the search of the automobile floor, under a loose "carpet flap" in particular, is the issue with which we are confronted today.
The starting point of our analysis is that the police in conducting an inventory search, may ordinarily inspect the glove compartment, the trunk, on top of the seats as well as under the front seats, and the floor of the automobile. An inspection of these areas is reasonable because these are common locations in or on which it is reasonably to be expected that the owner or occupant of an automobile may place items of personalty. The intrusion, although serious, is justified by the need to protect the police from claims. This is to say no more than in the typical case it is not unreasonable for the police to search such places while conducting an inventory. (emphasis added.) (577 F.2d at 893-94)
Opperman has been further construed and applied by the Supreme Court of Iowa in State v. Roth, 305 N.W.2d 501 (Iowa 1981), where the Court held that a warrantless inventory of an automobile may extend into the vehicle's locked trunk, and even into a closed paper bag inside the trunk. In Roth, supra, the Court stated:
Differing from the probable cause and personal luggage cases, the impounded motor vehicle situation presents a practical problem for law officers. As in this case, officers must frequently remove occupants from vehicles at night on criminal charges. The vehicles can hardly be left unattended; they may be broken into or stripped. If the officers call third parties to tow in the vehicles, they run the risk that contents of the passenger and trunk compartments may disappear in the process, or even after the vehicles are stored. They also run the risk of claims that they themselves stole items from the compartments. The officers thus have the problem of how to protect themselves and their governmental units from civil liability. The former days are no more when the officers and their governmental units could interpose an absolute defense simply from the performance of a governmental function. See Franks v. Kohl, 286 N.W.2d 663, 666-71 (Iowa 1979) (liability of public officers); chs. 25A, 613A, The Code (governmental tort liability).
The United States Supreme Court took a practical approach to this problem in Cady v. Dombrowski, 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973), and South Dakota v. Opperman, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976). In both cases the Court brought out the practical problems we have described and *756 found the particular searches to be reasonable under the circumstances. Dombrowski involved a variation of the situation; the officer believed the vehicle might contain a handgun which some third person might obtain and use. Opperman involved an inventory of the contents of a car which was twice ticketed for overparking within a single period. An officer observed a watch and other articles in the car. He thereupon had the car unlocked, and he inventoried its contents. In so doing, the officer came across marijuana in the unlocked glove compartment. The language used by the Court is quite broad, at least for the case in which officers follow standard procedures in taking inventory of the contents of impounded vehicles. Thus see id. at 373, 96 S.Ct. at 3099, 49 L.Ed.2d at 1007: "In applying the reasonableness standard adopted by the Framers, this Court has consistently sustained police intrusions into automobiles impounded or otherwise in lawful police custody where the process is aimed at securing or protecting the car and its contents."
Justice Powell was one of the five-justice majority in Opperman. He filed a concurring opinion. We do not understand, however, that he questioned the Court's opinion. Rather, he gave additional reasons for the result. His introductory statement was this: "While I join the opinion of the Court, I add this opinion to express additional views as to why the search conducted in this case is valid under the Fourth and Fourteenth Amendments." Id. at 376, 96 S.Ct. at 3101, 49 L.Ed.2d at 1009. We thus have an opinion joined in by five justices upholding an inventory search of an impounded motor vehicle.
(305 N.W.2d at 504-505)
This Court used the rationale of Opperman in affirming a thirty-year sentence for armed robbery in the very recent decision of Florence v. State, 397 So.2d 1105 (Miss. 1981).
In view of the facts and circumstances in the present case, the Court finds the trial judge properly denied the motion to suppress the shoes recovered from the automobile defendant was driving because it was the officer's duty to protect any valuables within the automobile at the time it was under the control of the Greenwood Police Department.
The remaining question is, did the trial court err in granting the state's Instruction No. 2, which is set out in full as follows:
The Court instructs the jury that the possession of property recently stolen is a circumstance which may be considered by the jury and from which, in the absence of a reasonable explanation, the jury may infer guilt.
The language that was contained in this instruction is the same that was interpreted and spelled out in Hall v. State, infra, and Fletcher v. State, infra, and was discussed by this Court when it condemned a much more lengthy instruction than was approved in Hall and Fletcher. We quote from Harper v. State, 355 So.2d 314 (Miss. 1978), wherein this Court stated:
This instruction as written was objectionable for several reasons. It certainly is not in keeping with the approved instructions set out in Hall v. State, 279 So.2d 915 (Miss. 1973) where we stated:
"An instruction which correctly states the principles of law applicable to cases involving possession of recently stolen property is set forth in Fletcher v. State, 168 Miss. 361, 151 So. 477 (1933), the instruction being as follows:
"... `The Court instructs the jury that the possession of property recently stolen is a circumstance which may be considered by the jury and from which, in the absence of a reasonable explanation, the jury may infer guilt of larceny. (168 Miss. at 365, 151 So. at 478.'
"In proper cases the instruction may be given as approved in Fletcher, but no attempt should be made to enlarge the scope of the instruction or to experiment with a change in language. (279 So.2d at 916)."

*757 The purpose of setting out the foregoing form of instruction was for the guidance of the trial judges and those prosecuting for the state. While Hall was a larceny case, the same type of instruction applies to a crime involving a charge of burglary which is based upon possession of recently stolen property taken in the burglary. The instruction must be amended to encompass the charge of burglary instead of larceny. The whole purpose of the Hall admonition was to inform the trial judges and district attorneys that the instruction should inform the jury that the possession of property recently stolen is only a circumstance to be considered by the jury and in the absence of reasonable explanation the jury may infer guilt of burglary. Under the circumstances of this case the giving of the instruction complained of was reversible error.
(355 So.2d at 316) (emphasis added.)
Defendant argues the instruction was improper because it allowed the jury to infer guilt of the burglary while mere possession of recently stolen property raises no inference of a burglarious breaking and entering, which is an essential element of the crime. One fallacy in defendant's argument is that it overlooks the well-settled proposition that instructions must be read together and considered as a whole. Cowan v. State, 399 So.2d 1346 (Miss. 1981). Appellant would have us overlook the fact that the appellant sought and obtained Instructions Nos. D-11 and D-13. Instruction D-11 is as follows:
The defendant, Stephen Robinson, has been charged by an indictment with the crime of burglary by breaking and entering Goldberg's Department Store, 501 Howard Street, Greenwood, Mississippi, in which goods and merchandise were kept for sale, with the intent to steal said goods and merchandise.
If you find from the evidence in this case beyond a reasonable doubt and to the exclusion of every other reasonable hypothesis consistent with innocence that: (1) Goldberg's Department Store, 501 Howard Street, Greenwood, Mississippi, was the property of Ervin Goldberg, and (2) defendant broke and entered the department store by throwing a brick through a plate glass window, and (3) shoes were kept there for sale and use, and (4) defendant intended to steal or carry away the shoes, which is a felony under the laws of Mississippi, then you shall find the defendant guilty of burglary.

If the State has failed to prove any one or more of these elements beyond a reasonable doubt and to the exclusion of every other reasonable hypothesis consistent with innocence, then you shall find the defendant not guilty of burglary. (emphasis added.)
Instruction D-13 goes further and states the following:
The Court instructs the Jury that you cannot convict this defendant unless you believe beyond a reasonable doubt and to a moral certainty that Stephen Robinson actually broke and entered, with the intent to steal, a certain building commonly known, called and being Goldberg's Department Store, the property of Ervin Goldberg at 501 Howard Street, Greenwood, Mississippi, or that he planned or assisted in or abetted the breaking thereof, and under no other state of facts can you convict this defendant of burglary. (emphasis added.)
These instructions, when considered as a whole, would seem to cure the problem of which appellant complains as to what the jury must find regarding the intent of breaking and entering to commit the crime of burglary which was the charge in this case.
It is further noted that Instruction S-1, as given by the court, deals with the question also and is quoted in full as follows:
The Court instructs the jury that if you believe from the evidence beyond a reasonable doubt and to the exclusion of every reasonable hypothesis consistent (sic) that the Defendant, Stephen Robinson, did unlawfully, feloniously, wilfully and burglariously break and enter Goldberg's *758 Shoe Store, owned by Ervin Goldberg, in which building goods, wares, chattels, merchandise and other things of value, the property of Ervin Goldberg, were kept for use or sale, with the felonious intent to take, steal and carry away said goods, wares, chattels, merchandise or other things of value kept in said building, then it is your sworn duty to find the Defendant, Stephen Robinson, guilty as charged. (emphasis added.)
In disposing of a similar question before this Court in 1981, Cowan v. State, supra, this Court said:
Although appellants shoot with a scatter-barrel gun under this assignment of error and do not draw a bead on any particular instruction, the gist of their argument seems to be that nowhere in the instructions was there a statement that the culpable negligence of the appellants, if any, must be the proximate cause of the fatal collision.
If this be the appellants' criticism of the instructions, the answer is that instructions S-1 (as to Fader), and S-3 (as to Cowan) and appellants' own instructions (D-10 as to Cowan) and (D-29 as to Fader), inform the jury in very clear and positive terms that the evidence must show beyond a reasonable doubt that the fatal collision was the direct result of the culpable negligence of the defendants before a verdict of guilty could be returned against them, and that their culpable negligence must have been the proximate cause of the death of Partee DePriest.
This Court has repeatedly held that instructions must be read and considered as a whole and that when the jury is properly instructed considering all the instructions there is no error. Hutchinson v. State, 391 So.2d 637 (Miss. 1980).
(399 So.2d at 1350)
Instruction No. 2, when read together with Instructions Nos. D-11, D-13 and S-1 correctly stated the applicable law and this assignment of error is without merit.
For the reasons stated, the conviction and sentence of Stephen Robinson are affirmed.
AFFIRMED.
PATTERSON, C.J., SMITH and SUGG, P. JJ., and WALKER, BROOM, ROY NOBLE LEE, BOWLING and HAWKINS, JJ., concur.

ON PETITION FOR REHEARING
SUGG, Presiding Justice, for the Court:
On Petition For Rehearing appellant argues that Instruction No. 2[1] as given by the court violates the due process requirement of the United States Constitution.
The burglary of Goldberg's Shoe Store was discovered by an officer at 12:39 a.m. and was accomplished by breaking a plate glass window in the store. Eight pairs of shoes were removed from a display inside the window of the store and three pairs of shoes were found in the possession of appellant shortly after discovery of the burglary. While investigating the burglary, Officer Futral was called to the scene of an accident 15 to 18 blocks from Goldberg's Shoe Store. Appellant had been involved in a collision between his automobile and a pickup truck. Officer Futral and other officers investigating the collision inventoried the contents of the automobile before permitting it to be towed away. The keys were removed from the ignition, the trunk of the appellant's automobile was opened, and three pairs of shoes which had been stolen from Goldberg's Shoe Store were in the trunk of the automobile. Appellant testified in his own defense that he had been in possession of the automobile since 6:00 or 7:00 p.m. on the previous day and that he and two other persons had been in the automobile but had not been near and had not burglarized Goldberg's Shoe Store.
Beginning with Harris v. State, 61 Miss. 304 (1883) and followed in six cases,[2] we *759 held that, in burglary cases, the State may obtain an instruction that the possession of property recently stolen is a circumstance which may be considered by the jury and from which, in the absence of a reasonable explanation, the jury may infer guilt of burglary.
Appellant relies heavily on State v. Searle, 339 So.2d 1194 (La. 1976) in support of his argument that the instruction as given by the court violated due process. Searle was charged with burglary and on petition for rehearing the Louisiana Court noted that there was little, if any, evidence to explain how the property was removed from its rightful location. The case before us is factually distinguishable from Searle because in our case the fact of the burglary was proved beyond any reasonable doubt with no evidence to the contrary. La.R.S. 15:432 provides, "A legal presumption relieves him in whose favor it exists from the necessity of any proof." According to the Louisiana court, one of the traditional and common sense presumptions required by the statute is "the person in the unexplained possession of property recently stolen is the thief." The Louisiana court reversed and remanded for a new trial relying on Barnes v. United States, 412 U.S. 837, 93 S.Ct. 2357, 37 L.Ed.2d 380 (1973). In Barnes the district judge instructed the jury that "Possession of recently stolen property, if not satisfactorily explained is ordinarily a circumstance from which you can reasonably draw the inference and find, in the light of the surrounding circumstances shown by the evidence in the case, that the person in possession knew the property had been stolen." Barnes was convicted on two counts of possession of U.S. Treasury checks stolen from the mails knowing them to be stolen, two counts of forging the checks, and two counts of uttering the checks, knowing the endorsements to be forged. The United States Supreme Court affirmed and stated:
We begin our consideration of the challenged jury instruction with a review of four recent decisions which have considered the validity under the Due Process Clause of criminal law presumptions and inferences. Turner v. United States, 396 U.S. 398, 90 S.Ct. 642, 24 L.Ed.2d 610 (1970); Leary v. United States, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969); United States v. Romano, 382 U.S. 136, 86 S.Ct. 279, 15 L.Ed.2d 210 (1965); United States v. Gainey, 380 U.S. 63, 85 S.Ct. 754, 13 L.Ed.2d 658 (1965).
In United States v. Gainey, supra, the Court sustained the constitutionality of an instruction tracking a statute which authorized the jury to infer from defendant's unexplained presence at an illegal still that he was carrying on "the business of a distiller or rectifier without having given bond as required by law." Relying on the holding of Tot v. United States, 319 U.S. 463, 467, 63 S.Ct. 1241, 1245, 87 L.Ed. 1519 (1943), that there must be a "rational connection between the fact proved and the ultimate fact presumed," the Court upheld the inference on the basis of comprehensive nature of the "carrying on" offense and the common knowledge that illegal stills are secluded, secret operations. The following Term the Court determined, however, that presence at an illegal still could not support the inference that the defendant was in possession, custody, or control of the still, a narrower offense. "Presence is relevant and admissible evidence in a trial on a possession charge; but absent some showing of the defendant's function at the still, its connection with possession is too tenuous to permit a reasonable inference of guilt  `the inference of the one from proof of the other is arbitrary... .' Tot v. United States, 319 U.S. 463, 467 [63 S.Ct. 1241, 1245, 87 L.Ed. 1519]." United States v. Romano, supra, 382 U.S. at 141, 86 S.Ct. at 282, 15 L.Ed.2d 210.

*760 Three and one-half years after Romano, the Court in Leary v. United States, supra, considered a challenge to a statutory inference that possession of marihuana, unless satisfactorily explained, was sufficient to prove that the defendant knew that the marihuana had been illegally imported into the United States. The Court concluded that in view of the significant possibility that any given marihuana was domestically grown and the improbability that a marihuana user would know whether his marihuana was of domestic or imported origin, the inference did not meet the standards set by Tot, Gainey, and Romano. Referring to these three cases, the Leary Court stated that an inference is "irrational' or `arbitrary,' and hence unconstitutional, unless it can at least be said with substantial assurance that the presumed fact is more likely than not to flow from the proved fact on which it is made to depend." 395 U.S. at 36 [89 S.Ct. at 1548], 23 L.Ed.2d 57. In a footnote the Court stated that since the challenged inference failed to satisfy the more-likely-than-not standard, it did not have to "reach the question whether a criminal presumption which passes muster when so judged must also satisfy the criminal `reasonable doubt' standard if proof of the crime charged or an essential element thereof depends upon its use." Id., at [36] n. 64 [89 S.Ct. at 1548 n. 64], 23 L.Ed.2d 57.
Finally, in Turner v. United States, supra, decided the year following Leary, the Court considered the constitutionality of instructing the jury that it may infer from possession of heroin and cocaine that the defendant knew these drugs had been illegally imported. The Court noted that Leary reserved the question of whether the more-likely-than-not or the reasonable-doubt standard controlled in criminal cases, but it likewise found no need to resolve that question. It held that the inference with regard to heroin was valid judged by either standard. 396 U.S. at 416 [90 S.Ct. at 652], 24 L.Ed.2d 610. With regard to cocaine, the inference failed to satisfy even the more-likely-than-not standard. Id., at 419 [90 S.Ct. at 653], 24 L.Ed.2d 610.
The teaching of the foregoing cases is not altogether clear. To the extent that the "rational connection," "more likely than not," and "reasonable doubt" standards bear ambiguous relationships to one another, the ambiguity is traceable in large part to variations in language and focus rather than to differences of substance. What has been established by the cases, however, is at least this: that if a statutory inference submitted to the jury as sufficient to support conviction satisfies the reasonable-doubt standard (that is, the evidence necessary to invoke the inference is sufficient for a rational juror to find the inferred fact beyond a reasonable doubt) as well as the more-likely-than-not standard, then it clearly accords with due process.
... .
Common-law inferences, like their statutory counterparts, must satisfy due process standards in light of present-day experience. In the present case the challenged instruction only permitted the inference of guilt from unexplained possession of recently stolen property. The evidence established that petitioner possessed recently stolen Treasury checks payable to persons he did not know, and it provided no plausible explanation for such possession consistent with innocence. On the basis of this evidence alone common sense and experience tell us that petitioner must have known or been aware of the high probability that the checks were stolen. Cf. Turner v. United States, 396 U.S. at 417 [90 S.Ct. at 652], 24 L.Ed.2d 610; Leary v. United States, 395 U.S. at 46 [89 S.Ct. at 1553], 23 L.Ed.2d 57. Such evidence was clearly sufficient to enable the jury to find beyond a reasonable doubt that petitioner knew the checks were stolen. Since the inference thus satisfies the reasonable-doubt standard, the most stringent standard the Court has applied in judging permissive criminal law inferences, we conclude that it satisfies the requirements *761 of due process. (412 U.S. at 841-844; 93 S.Ct. at 2360-2362; 37 L.Ed.2d at 385-387).
In the case at bar, the state proved that Goldberg's Shoe Store was burglarized, that three pairs of shoes taken in the burglary were in the trunk of appellant's automobile, and the shoes were seized from appellant's wrecked automobile 15 to 18 blocks from the scene of the burglary. The evidence was sufficient for a rational juror to infer that it was more-likely-than-not beyond a reasonable doubt that appellant committed the burglary from the fact that he was in possession of shoes taken in the burglary a few blocks away and provided no reasonable explanation for such possession consistent with innocence.
In Engbrecht v. State, we held:
The possession of recently stolen goods is like any other circumstance in evidence, which, if unexplained, would point logically to guilt and from which the jury, as trier of fact, might reasonably infer guilt, if they chose to do so. As reasonable men, jurors must be assumed to attach to circumstances in evidence such significance as human experience has taught they deserve. The unexplained possession of recently stolen goods must be ranked in strength with the proverbial circumstance of the finding of a "trout in the milk" as being a circumstance pointing with great cogency to a particular conclusion. (268 So.2d at 509).
We conclude that the inference submitted to the jury by the instruction accords with due process and the evidence was sufficient to satisfy both the reasonable-doubt and more-likely-than-not standard. Accordingly, the petition for rehearing is denied.
DENIED.
WALKER, P.J., and BROOM, ROY NOBLE LEE, BOWLING, HAWKINS and DAN M. LEE, JJ., concur.
PATTERSON, C.J., dissents.
PRATHER, J., takes no part.
PATTERSON, Chief Justice, dissenting:
I dissent with deference from the majority opinion. It is my belief the facts of this case were not sufficient to grant an "inference without explanation instruction" thereby permitting the jury to find the defendant guilty of burglary by use of inferences to support the essentials of that crime.
It should be observed the indictment was for burglary when it more properly should have been for the unlawful possession of recently stolen property. Miss. Code Ann. § 97-17-69 (1972). Necessarily, however, the essential elements of burglary, Miss. Code Ann. § 97-17-33 (1972), must be proven beyond a reasonable doubt by the state, i.e., breaking and entering with the intent to steal. In my humble judgment the state did not do so.
The burglary occurred sometimes between 11:05 p.m. and 12:39 a.m. when an officer discovered a broken glass in the front of the victim's building. This officer remained at the burglary scene for some twenty or twenty-five minutes when he was called to investigate an automobile accident approximately 15 to 18 blocks from the burglarized store. The investigation led to the appellant's arrest for drunkenness and an inventory of his car which disclosed three of the eight pairs of shoes that were taken from the burglarized store.
My concern is that we should not lend this court's approval to an instruction which permits a jury to return a verdict of guilty without proof of the crime beyond a reasonable doubt.
The questioned instruction, "The court instructs the jury that the possession of property recently stolen is a circumstance which may be considered by the jury and from it, in the absence of a reasonable explanation, the jury may infer guilt." The appellant's attorney objected when it was offered for the court's approval, stating "we object to the giving of that instruction. However, it appears to be the words of the supreme court on that instruction." The court responded: "Well, the only thing I have wrong with that is even though the *762 Supreme Court has approved it, and it is probably in the Form Book `may infer guilty of what' larceny, of course, is the lesser offense of burglary. Possession of recently stolen goods  does that have  no inference, whatsoever, of breaking. You can't draw an inference of breaking from the fact that recently stolen goods were possessed. I will give that instruction." The trial court's language portrays doubt as to the propriety of the instruction and also that it was granted because of this court's previous approval of somewhat similar instructions. Unfortunately it overlooked the rule that all instructions must be linked to the evidence in each individual case. This warrants, in my opinion, a review of our cases on burglary convictions based upon an "inference without explanation" instruction.
The first we note is Belote v. State, 36 Miss. 96, 120 (72 Am.Dec. 163) (1858), a larceny conviction, wherein the following instruction was approved, "If the evidence satisfies the jury that Ephriam Strout lost bank bills, and that they, or a part of them, had been found in defendant's possession shortly after, in the absence of other evidence proving how defendant came into possession, they will find him guilty." (Emphasis added). Twenty three years later, in Stokes v. State, 58 Miss. 677, 680 (1881), another larceny case, although not expressly overruling Belote, we held as follows:
In Belote's Case, 36 Miss. 97 [sic] [72 Am.Dec. 163], the presumption was recognized and spoken of as being one of fact, which, it was said, if unexplained, would "stand and warrant a conviction;" and yet an instruction was approved which said to the jury that, if you believe the possession is unexplained, you "will find the accused guilty." This was equivalent to a command to them to do so and was improper; since it can never be admissible for the court to direct a verdict upon an inference of fact which will only warrant or justify it. The jury should have been told that they might find him guilty, or would be warranted in so doing.
Reversed, and new trial awarded. (Emphasis added).
These cases established the precedent for inference instructions in burglary actions. Perhaps a reference to each will portray some of the vagaries found as well as the precautions this court has suggested in approving them.
In Harris v. State, 61 Miss. 304, 305 (1883), the appellant was convicted on an indictment charging him with burglary and larceny. On appeal, an inference instruction was approved in the following language, "The fourth instruction for the State conforms to the doctrine laid down in Stokes' Case, 58 Miss. 680, that the possession of recently stolen property is a circumstance from which the jury may infer guilt. This is its substance, though a little differently expressed. It was correct." Its significance is that the instruction was enlarged to include burglary albeit in conjunction with larceny.
Wiley v. State, 129 Miss. 196, 205, 91 So. 906, 908 (1922), concerned a burglary conviction. It held,
Appellant assigns as error by the trial court the giving of an instruction for the state whereby the jury were charged that possession of stolen goods which had been taken from a burglarized building not satisfactorily explained was prima facie evidence of both the burglary and the larceny. The criticism of the charge is that it told the jury that the possession alone by the appellant of the stolen goods, unexplained, was prima facie evidence of the guilt of the appellant of both the burglary and larceny charged. There was left out of the instruction the qualification that the possession must have been recent after the crime. The criticism of this instruction is well founded. However, the giving of it was entirely harmless to the appellant under the facts of this case, for the reason that in his own testimony he admitted that his possession of the shoes was a recent possession; ... (Emphasis added).
Although this instruction did not accord with Stokes, inasmuch as it authorized prima facie finding of guilt rather than an *763 inference from which the jury might infer guilt it was nevertheless approved although disapproved because it was not qualified by the word "recent." Regardless, the court approved an inference instruction on the charge of "burglarizing the storehouse ... and stealing therefrom one pair of shoes."
In Wood v. State, 155 Miss. 298, 124 So. 353 (1929), a burglary conviction was appealed. In it, an instruction conforming to that in Harris, was sanctioned although it was a burglary case. The court did state however, that the burglary must be proved by evidence independent of mere possession. In the case subjudice there was adequate proof of the breaking and entering by someone but no evidence of identity apart from the possession of three pairs of shoes.
Millette v. State, 167 Miss. 172, 186, 148 So. 788, 792 (1933), again authorized an inference instruction in a burglary case. It held, "It was not error for the court to grant the instruction to the state that the recent possession of stolen property made a prima facie case of guilt against the appellant in the absence of a reasonable explanation." The court found the explanation of Mrs. Millette to be of the "man in the moon," variety and rejected it. We observe the instruction authorized a prima facie finding of guilt if the jury found the explanation unreasonable, again contrary to Stokes and other cases.
More recently in Huddleston v. State, 220 Miss. 292, 296, 70 So.2d 621, 623 (1954), (burglary) the following instruction was granted, "The possession of recently stolen property unexplained raises a presumption of guilt of the person so in possession which presumption may be considered along with all evidence in the case by the jury." Obviously, this holding overlooked the teaching of Stokes, as well as Matthews v. State, 61 Miss. 155, 156, wherein it was stated, "The most that can be said is that the fact of such possession may and ought to be considered by the jury in determining the question of guilt, and that where no reasonable and satisfactory explanation is given of such possession, the jury may from it infer guilt." In Huddleston the evidence indicating appellant's participation in the burglary was not limited to the proof of possession by the appellant of the recently stolen pistol. Justice Kyle pointed out there was other evidence indicating the defendant's guilt sufficient to warrant the jury's finding that the appellant was guilty as charged.
Engbrecht v. State, 268 So.2d 507 (Miss. 1972), referred to unexplained possession of recently stolen goods as ranking in strength with the proverbial circumstance of finding a "trout in the milk" as pointing with great cogency to a particular conclusion. Nevertheless, the court qualified this statement by carefully detailing other facts which placed the defendant's truck, where the stolen articles were found, at the scene of the burglary just thirty minutes prior to the crime's discovery. There is no such proof in the case presently before us, a distinction of some significance in my opinion.
Undoubtedly this court has approved an instruction arising from the unexplained possession of recently stolen property from which a jury may infer guilt. I think it has done so, however, without giving consideration, at least I find none expressed, to the essentials of the three different crimes which necessarily require different proof. It may well be just to uphold a conviction of the possession of property recently stolen if the possessor does not reasonably explain the possession. In my judgment this one inference can be logically argued to support a conviction on that charge. But can we add to the inference of guilty knowledge the additional inference that the possessor stole the property? Personally I have some doubt concerning the stacking of one inference upon another to come to such conclusion. I have no doubt however, that placing a third inference upon the other two to infer a breaking and entering is nothing more than a court granting a jury license to infer guilt in a burglary charge when such is not supported by the facts. In my judgment this conviction does not conform to our standards of a jury finding of guilty beyond a reasonable doubt. See Barnes v. United States, 412 U.S. 837, 93 S.Ct. 2357, *764 37 L.Ed.2d 380 (1973), and more recently State v. Searle, 339 So.2d 1194 (La. 1976).
The case of United States v. Jennewein, 580 F.2d 915, 916 (6th Cir.1978), more nearly accords with my thoughts. It involved a theft from interstate shipment of goods wherein it was held that the defendant's unexplained possession of some of the recently stolen property was not sufficient to support a conviction of theft. The court stated:
Neither Barnes, supra, nor any other authority cited or discovered justifies the additional inference that would permit the finder of fact to conclude that the possessor of stolen property by virtue of such possession may be deemed to have participated in its theft. Indeed, in the circumstances reflected in the present record, the inclusion of the questioned language in the charge to the jury caused it to virtually equate an instruction to return a verdict of guilty.
In the present case, appellant admits he was drunk at the time of the accident stating that the first time he saw the shoes was when the officer opened the trunk. He emphatically denied throwing a brick or rock through the window of the shoe store or that he was with anyone who did and denied that he was present when shoes were taken from the store. Whether an outright denial of knowledge of possession of the shoes constitutes a reasonable or unreasonable explanation I do not know, but I do not think an explanation, if found to be unreasonable by the jury, rises to the dignity of factual evidence from which a jury could find a verdict of guilty beyond a reasonable doubt.
I would sustain the petition for rehearing.
NOTES
[1] The Court instructs the Jury that the possession of property recently stolen is a circumstance which may be considered by the Jury and from which, the absence of a reasonable explanation, the Jury may infer guilt.
[2] Harper v. State, 355 So.2d 314 (Miss. 1978); Engbrecht v. State, 268 So.2d 507 (Miss. 1972); Huddleston v. State, 220 Miss. 292, 70 So.2d 621 (1954); Millette v. State, 167 Miss. 172, 148 So. 788 (1933); Wood v. State, 155 Miss. 298, 124 So. 353 (1929); Wiley v. State, 129 Miss. 196, 91 So. 906 (1922).